EXHIBIT B

AFFIDAVIT OF KIRK TRUJILLO

(3:05-cv-246-TMB)

# SCHLUMBERGER TECHNOLOGY CORPORATION
## SAVINGS AND PROFIT SHARING PLAN

(As Merged, Amended and Restated Effective January 1, 2003)

Exhibit B
Page 1 of 16

# SCHLUMBERGER TECHNOLOGY CORPORATION
## SAVINGS AND PROFIT SHARING PLAN

(As Merged, Amended and Restated Effective January 1, 2003)

## I N D E X

Page

SECTION 1 DEFINITIONS ................................................................................. 2
| | | |
|---|---|---|
| 1.1 | Account | 2 |
| 1.2 | Active Service | 3 |
| 1.3 | Administrator | 4 |
| 1.4 | Admissible Compensation | 4 |
| 1.5 | Affiliate | 4 |
| 1.6 | Beneficiary | 5 |
| 1.7 | Board of Directors | 5 |
| 1.8 | Break In Service | 5 |
| 1.9 | Camco Plan | 6 |
| 1.10 | Code | 6 |
| 1.11 | Convergent Plan | 6 |
| 1.12 | Convergent Participant | 6 |
| 1.13 | Dowell Plan | 6 |
| 1.14 | Effective Date | 6 |
| 1.15 | Employee | 6 |
| 1.16 | Employee Group | 6 |
| 1.17 | Employer | 6 |
| 1.18 | ERISA | 6 |
| 1.19 | GeoQuest Plan | 6 |
| 1.20 | Hour of Service | 7 |
| 1.21 | Income of the Trust Fund | 8 |
| 1.22 | Individual Retirement Account | 8 |
| 1.23 | Investment Fund | 8 |
| 1.24 | Leased Employee | 8 |
| 1.25 | LHS Plan | 8 |
| 1.26 | LHS Participant | 8 |
| 1.27 | OSI Plan | 8 |
| 1.28 | OSI Participant | 8 |
| 1.29 | Participant | 8 |
| 1.30 | Participating Affiliate | 8 |
| 1.31 | Plan | 9 |
| 1.32 | Plan Year | 9 |
| 1.33 | Prior Plan | 9 |
| 1.34 | Qualified Military Service | 9 |
| 1.35 | Sema Plan | 9 |
| 1.36 | Sema Participant | 9 |

Exhibit B
2   16

| 1.37 | Trust | 9 |
| 1.38 | Trust Agreement | 9 |
| 1.39 | Trust Fund | 9 |
| 1.40 | Trustee | 9 |
| 1.41 | Valuation Date | 9 |
| 1.42 | Water and Gas Plan | 9 |
| 1.43 | Year of Eligibility Service | 10 |

SECTION 2 PARTICIPATION .................................................. 11
| 2.1 | Eligibility | 11 |
| 2.2 | Re-Employment of Employee | 11 |
| 2.3 | Prior Plan Participants | 11 |

SECTION 3 CONTRIBUTIONS .................................................. 12
| 3.1 | Employer Contributions | 12 |
| 3.2 | Pre-Tax Savings Contributions | 12 |
| 3.3 | Matching Contributions | 14 |
| 3.4 | Profit Sharing Contributions | 14 |
| 3.5 | Employer Contributions and Pre-Tax Savings Contributions to be Tax Deductible | 15 |
| 3.6 | Funding Policy | 15 |
| 3.7 | Contributions Generally Irrevocable | 15 |
| 3.8 | Contributions Related to Qualified Military Service | 15 |

SECTION 4 VALUATION AND ALLOCATION .................................. 16
| 4.1 | Valuation of the Trust Fund | 16 |
| 4.2 | Allocations to Participants' Accounts | 16 |
| 4.3 | Trustee's Determination Final | 17 |
| 4.4 | Notice to Participant | 18 |
| 4.5 | Interest in Specific Assets | 18 |
| 4.6 | Recognition of Different Investment Funds | 18 |

SECTION 5 VESTING .......................................................... 19
| 5.1 | Vesting Schedule | 19 |
| 5.2 | Disposition of Forfeitures | 19 |
| 5.3 | Vesting Upon Re-Employment | 19 |
| 5.4 | Vesting of Prior Plan Participants | 20 |

SECTION 6 DISTRIBUTIONS ................................................. 21
| 6.1 | In Active Service | 21 |
| 6.2 | Upon Termination of Active Service | 21 |
| 6.3 | Election and Time of Distribution | 21 |
| 6.4 | Form of Distribution | 22 |
| 6.5 | Withdrawal of Contributions | 25 |
| 6.6 | Loans to Participants | 26 |
| 6.7 | Distribution Upon Death | 29 |
| 6.8 | Distribution to Conform With Law | 30 |

Exhibit B
3    16

| 6.9 | Distribution Constitutes Release | 30 |
| 6.10 | Participant's Right to Transfer Eligible Rollover Distribution | 31 |
| 6.11 | Required Minimum Distributions: | 32 |

**SECTION 7 CLAIMS FOR BENEFITS** ........ 37

| 7.1 | Presenting Claims for Benefits | 37 |
| 7.2 | Claims Review Procedure | 38 |
| 7.3 | Disputed Benefits | 38 |

**SECTION 8 PLAN ADMINISTRATOR AND FINANCE COMMITTEE** ........ 39

| 8.1 | Plan Administrator | 39 |
| 8.2 | Duties, Powers and Procedures of Administrative Committee | 39 |
| 8.3 | Reporting Responsibilities of Administrator | 40 |
| 8.4 | Finance Committee | 40 |
| 8.5 | Duties of Finance Committee | 40 |
| 8.6 | Finance Committee Action | 40 |
| 8.7 | Responsibility, Powers and Limitations | 41 |
| 8.8 | Employer Not Responsible for Actions of Finance Committee or Administrator | 41 |
| 8.9 | Expenses of Administrative Committee and Finance Committee | 41 |
| 8.10 | Allocation of Responsibility Among Fiduciaries for Plan and Trust Administration | 42 |

**SECTION 9 TRUST AGREEMENT AND INVESTMENT FUNDS** ........ 43

| 9.1 | Trust Agreement | 43 |
| 9.2 | Investment Funds | 43 |
| 9.3 | Investment Direction of Account | 44 |
| 9.4 | Investment Directions of Participants' Prior Account Balances | 46 |
| 9.5 | Benefits Paid Solely From Trust Fund | 46 |
| 9.6 | Administrator's Directions to Trustee | 46 |

**SECTION 10 AMENDMENT, SUCCESSOR EMPLOYER, TERMINATION** ........ 48

| 10.1 | Amendment | 48 |
| 10.2 | Successor Employer | 48 |
| 10.3 | Complete Discontinuance of Contributions | 48 |
| 10.4 | Termination of the Plan | 48 |
| 10.5 | Merger of Plan With Another Plan | 50 |
| 10.6 | Adoption of the Plan | 50 |

**SECTION 11 TRANSFER OF PARTICIPANTS** ........ 51

| 11.1 | To Active Service With an Affiliate | 51 |
| 11.2 | From Active Service With a Participating Affiliate | 51 |

**SECTION 12 MISCELLANEOUS** ........ 52

| 12.1 | Rollover Contributions | 52 |
| 12.2 | Inalienability of Credits or Benefits | 53 |
| 12.3 | Separability | 54 |

Exhibit B
4 16

| | | |
|---|---|---|
| 12.4 | Revisions to Conform With Law | 54 |
| 12.5 | Rules of Construction | 54 |
| 12.6 | Defense of Trust | 54 |
| 12.7 | Pronouns | 54 |

SECTION 13 LIMITATIONS ON BENEFITS ........................................................ 55

SECTION 14 TOP-HEAVY PLAN REQUIREMENTS ........................................ 60
| | | |
|---|---|---|
| 14.1 | General Rule | 60 |
| 14.2 | Vesting Provisions | 60 |
| 14.3 | Minimum Contribution Percentage | 60 |
| 14.4 | Limitation on Compensation | 61 |
| 14.5 | Coordination With Other Plans | 61 |
| 14.6 | Distributions to Certain Key Employees | 61 |
| 14.7 | Determination of Top-Heavy Status | 62 |

SECTION 15 TESTING OF CONTRIBUTIONS ..................................................... 66
| | | |
|---|---|---|
| 15.1 | Definitions | 66 |
| 15.2 | Actual Deferral Percentage | 67 |
| 15.3 | Actual Deferral Percentage Limits | 67 |
| 15.4 | Reduction of Pre-Tax Contribution Rates by Leveling Method | 67 |
| 15.5 | Increase in Pre-Tax Contribution Rates | 68 |
| 15.6 | Excess Pre-Tax Contributions | 68 |
| 15.7 | Contribution Percentage | 69 |
| 15.8 | Contribution Percentage Limits | 70 |
| 15.9 | Treatment of Excess Aggregate Contributions | 70 |

Exhibit B
5 16

## SCHLUMBERGER TECHNOLOGY CORPORATION
## SAVINGS AND PROFIT SHARING PLAN

(As Merged, Amended and Restated Effective January 1, 2003)

### PREAMBLE

Schlumberger Technology Corporation, a Texas corporation (the "Company"), adopted the Schlumberger Technology Corporation Profit Sharing Plan, on November 1, 1965, for the benefit of its eligible employees. The Schlumberger Technology Corporation Profit Sharing Plan was amended and restated effective as of January 1, 1976, was amended and restated effective as of January 1, 1985 and was further amended, effective January 1, 1985, by the First and Second Amendments thereto.

Effective as of January 1, 1987, the Board of Directors of Schlumberger Technology Corporation authorized the amendment and restatement of the Schlumberger Technology Corporation Profit Sharing Plan in order to permit participants to make contributions on a pre-tax basis in accordance with Section 401(k) of the Internal Revenue Code of 1986 (the "Code") commencing as of March 1, 1987, to permit participants to borrow from their participant account balances, to make certain other changes required by the Tax Reform Act of 1986, and to rename the Plan the Schlumberger-Doll Research Profit Sharing Plan. The Schlumberger-Doll Research Profit Sharing Plan, as amended and restated effective January 1, 1987 and as thereafter amended shall hereinafter be referred to as the "1987 Plan." Schlumberger Technology Corporation adopted the Schlumberger Master Profit Sharing Trust (the "Trust") to provide a trust to hold and administer funds contributed under the 1987 Plan for the exclusive benefit of the employees included thereunder.

Effective as of January 1, 1989, the Board of Directors of Schlumberger Technology Corporation authorized the amendment and restatement of the 1987 Plan in order to change the eligibility requirements and to make certain other changes required by the Tax Reform Act of 1986 (the "1989 Plan").

Effective as of January 1, 1995, the 1989 Plan was amended to rename the 1989 Plan the Schlumberger Doll Research Savings and Profit Sharing Plan.

Effective as of January 1, 1999, the Board of Directors of Schlumberger Technology Corporation authorized the amendment and restatement of the 1989 Plan in order to incorporate (i) all prior amendments to the 1989 Plan, including amendments incorporating changes required by the Uniformed Services Employment and Reemployment Rights Act, Retirement Protection Act of 1994 under the General Agreement on Tariffs and Trades, Small Business Job Protection Act of 1996 and Tax Reform Act of 1997, and (ii) to make certain design changes to the 1989 Plan (the "1999 Plan").

Effective as of March 1, 2000, the Board of Directors of the Company authorized the amendment and restatement of the 1999 Plan, as amended, in order to (i) add the life expectancy option form of benefit payment, add new investment funds, including a participant self-directed account fund, and make certain design changes to the Plan, and (ii) incorporate

certain required changes under the Internal Revenue Service Restructuring and Reform Act of 1998 and the Community Renewal Tax Relief Act of 2000 (the "2000 Plan").

Effective as of January 1, 2003, the Board of Directors of the Company authorized the merger of the following plans, each as in effect on December 31, 2002: (1) Anadrill Savings and Profit Sharing Plan, (2) Camco Thrift Plan, (3) Dowell Savings Plan, (4) Electricity Management U.S. 401(k) Savings Plan, (5) GeoQuest Savings and Profit Sharing Plan, (6) Oilfield Services-Shared Resources Savings and Profit Sharing Plan, (7) Omnes Savings and Profit Sharing Plan, (8) Schlumberger Doll Research Savings and Profit Sharing Plan, (9) Schlumberger Technologies Savings and Profit Sharing Plan, (10) Schlumberger Well Services Savings and Profit Sharing Plan, (11) Sedco Forex Resources Savings and Profit Sharing Plan, (12) Water and Gas USA Profit Sharing Plan, (13) Operational Services, Inc. 401(k) Profit Sharing Plan, and (14) ElectroMagnetic Instruments, Inc. 401(k) Profit Sharing Plan (collectively the "Savings Plans"). Said merged Savings Plans shall be continued, amended, restated and renamed the Schlumberger Technology Corporation Savings and Profit Sharing Plan (the "Plan"), effective as of January 1, 2003.

From and after January 1, 2003, the merged Savings Plans shall constitute and will be maintained as a "single plan" within the meaning of 414(l) of the Code, with the Plan being the surviving plan for all legal purposes, including reporting and disclosure under ERISA, and all assets of the Plan will be available to pay the benefits of all participants and beneficiaries in the Plan.

The Plan and the Trust are intended to meet the requirements of Sections 401(a), 401(k), and 501(a) of the Internal Revenue Code of 1986 and of the Employee Retirement Income Security Act of 1974, as either may be amended from time to time.

NOW, THEREFORE, Schlumberger Technology Corporation hereby amends, restates, continues, merges and renames the 2000 Plan, effective as of January 1, 2003, to read as follows:

## SECTION 1

## DEFINITIONS

1.1     Account: With respect to a Participant all of the ledger accounts maintained by the Trustee to set out such Participant's proportionate interest in one or more Investment Funds.

A.     A "Pre-Tax Savings Account" shall be maintained for each Participant in each applicable Investment Fund which reflects the pre-tax savings contributions made pursuant to the Participant's deferral elections, the pre-tax savings contributions transferred from the Prior Plan, if any, and the Income of the Trust Fund allocated to that Account.

B.     An "Employer Account" shall be maintained for each Participant in each applicable Investment Fund which reflects the portion of the employer contributions and forfeitures allocated to the Participant, the employer contributions and forfeitures transferred from the Prior Plan and the Income of the Trust Fund allocated to that Account.

Service upon the expiration of a leave of absence (as set forth immediately above), or (iv) one year from the date the Employee or Participant is absent from active employment for any reason other than retirement, death, quit, discharge or leave of absence. Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to Qualified Military Service will be provided in accordance with Section 414(u) of the Code.

1.3    Administrator: The Administrative Committee who shall serve as the Plan Administrator under ERISA and whose functions are specified under Section 8 hereof.

1.4    Admissible Compensation: The aggregate direct payments of compensation paid by the Employer to or for an Employee while a Participant during a calendar year, or portion thereof, including normal salary, wages, overtime compensation, commissions, bonuses and salary deferral amounts under Section 3.2, if any, but excluding:

(1)    Compensation for employment during any period in which an individual is not an Employee within the meaning of Section 1.17; and

(2)    Any special payments of compensation, including, but not limited to, income arising pursuant to the exercise of a stock option, field meal allowance, early retirement payments, severance payments, pay in lieu of vacation or enhanced parental leave, tuition reimbursement and moving allowances; and

(3)    Payment on behalf of the Participant by the Employer to this or any other pension plan, profit sharing plan, savings plan or to any other employee benefit plan.

Admissible Compensation taken into account under the Plan for any Participant during a given Plan Year shall not exceed $200,000 (or such other amount provided under Code Section 401(a)(17)), as adjusted for cost-of-living increases in accordance with Code Section 401(a)(17)(B).

For purposes of the contributions under Section 3.8, a Participant's Admissible Compensation during his period of Qualified Military Service shall be equal to (i) the Admissible Compensation the Participant would have received during his period of Qualified Military Service if he were not in Qualified Military Service, determined based on the rate of pay the Participant would have received from the Employer but for his absence due to such service; or (ii) if the Admissible Compensation the Participant would have received from the Employer during his period of Qualified Military Service is not reasonably certain, then the Participant's average Admissible Compensation from the Employer during the 12-month period immediately preceding the Participant's Qualified Military Service (or, if shorter, the period of employment immediately preceding his Qualified Military Service).

1.5    Affiliate: Schlumberger Limited, a Netherlands Antilles corporation, and any corporation in which the shares owned or controlled directly or indirectly by Schlumberger Limited shall represent 40% or more of the voting power of the issued and outstanding capital stock of such corporation. In addition to the above, the term Affiliate shall include any corporation or other trade or business which, together with the Employer, is "under common control" within the meaning of Section 414(b) or (c) as modified by Section 415(h) of the Code;

Employee subsequently returns to active employment with the Employer no later than (i) the first full regularly scheduled work period on the first full calendar day, plus the expiration of eight (8) hours, after his Qualified Military Service ends if such Qualified Military Service is for less than 31 days; (ii) 14 days after his Qualified Military Service ends if such Qualified Military Service is for more than 30 days but less than 180 days; or (iii) 90 days after his Qualified Military Service ends if such Qualified Military Service is for more than 180 days.

    1.9    <u>Camco Plan</u>:  The Camco Thrift Plan as in effect on December 31, 2002.

    1.10    <u>Code</u>:  The Internal Revenue Code of 1986, as amended.

    1.11    <u>Convergent Plan</u>:  The Convergent Group Corporation Profit Sharing 401(k) Plan as in effect on June 30, 2002, immediately prior to the merger of the Convergent Plan with and into the Schlumberger Well Services Savings and Profit Sharing Plan.

    1.12    <u>Convergent Participant</u>:  Any Participant who was a participant in the Convergent Plan on June 30, 2002.

    1.13    <u>Dowell Plan</u>:  The Dowell Savings and Profit Sharing Plan as in effect on December 31, 2002.

    1.14    <u>Effective Date</u>:  January 1, 2003, the effective date of the Plan as amended and restated herein, unless otherwise specified herein.

    1.15    <u>Employee</u>:  Any person employed by and carried on the United States payroll of the Employer, including any Leased Employee providing services for the Employer.

    1.16    <u>Employee Group</u>:  The employee groups designated by each Employer as set forth on Attachment A and any such other identifiable operating unit or employee group under the Plan as may be designated from time to time by the Employer.

    1.17    <u>Employer</u>:  Schlumberger Technology Corporation, a Texas corporation, and any successor to all or substantially all of its property and business unless otherwise expressly determined at the time of such succession, and any Affiliate which shall adopt this Plan pursuant to the provisions of Section 10.6 and the successors, if any, to such Affiliate.  Effective as of January 1, 2003, the following Affiliates have adopted the Plan:  Schlumberger Technologies, Inc., Schlumberger Omnes, Inc., and SchlumbergerSema, Inc.

    1.18    <u>ERISA</u>:  Public Law No. 93-406, the Employee Retirement Income Security Act of 1974, as amended from time to time.

    1.19    <u>GeoQuest Plan</u>:  The GeoQuest Savings and Profit Sharing Plan as in effect on December 31, 2002.

B
9  16

## SECTION 2

### PARTICIPATION

2.1    Eligibility: Each Employee as of January 1, 2003 who was a Participant in the Prior Plan as in effect on December 31, 2002 shall continue to be a Participant in this Plan from and after the Effective Date. Except as otherwise provided herein, any other Employee shall become a Participant in this Plan on the later of (i) the Effective Date or (ii) (a) with respect to his ability to make Pre-Tax Savings Contributions, the first day of the calendar month coincident with or next following his commencement of Active Service and (b) with respect to his ability to receive Basic and Supplemental Matching Contributions and Profit Sharing Contributions, the first day of the calendar month coincident with or next following completion of a Year of Eligibility Service. Any Employee who has completed a Year of Eligibility Service with an Affiliate and who transfers to Active Service with the Employer on or after January 1, 2003 shall begin to participate in the Plan on the date he begins Active Service with the Employer.

Notwithstanding anything to the contrary in the Plan, any Employee who is (a) covered by a collective bargaining agreement which does not provide for participation in this Plan and under which retirement benefits were the subject of good faith bargaining, (b) a non-resident alien who receives no earned income from the Employer which constitutes income from sources within the United States, (c) classified as a Leased Employee, (d) designated, compensated or otherwise classified or treated as an independent contractor or a leased employee by the Employer or any Affiliate, or (e) any person who (i) is not on the Employer's salaried or hourly employee payroll, (ii) has agreed in writing to be treated as other than an employee, or (iii) whose compensation is reported to the Internal Revenue Service on a form other than Form W-2, shall not be eligible to participate in the Plan.

2.2    Re-Employment of Employee: If any Employee whose Active Service has been terminated, whether voluntarily or involuntarily, shall subsequently re-enter the employment of the Employer, his Hours of Service both before and after the termination of his Active Service shall be considered for purposes of determining his eligibility to participate in the Plan following re-employment if he did not incur a Break In Service prior to his re-employment. If the Employee incurred a Break In Service before completing a Year of Eligibility Service, then he shall be treated as a new Employee who must complete a Year of Eligibility Service. If the Employee incurred a Break In Service after completing a Year of Eligibility Service, he shall recommence participation in the Plan immediately upon his recommencement of Active Service.

2.3    Prior Plan Participants: All persons who on December 31, 2002 were participants with account balances in the Prior Plan automatically became Participants in this Plan on January 1, 2003. Effective as of January 1, 2003 (the "Merger Date"), all of the accounts of participants under the Prior Plan were transferred to and made a part of this Plan. Such amounts became a part of a Participant's Account in accordance with the provisions of Section 1.1 of the Plan and were invested in the Investment Funds in accordance with the provisions of Section 9 of the Plan. Except as otherwise specified herein, such transferred amounts are subject to all of the other provisions of this Plan and shall be treated for all purposes as part of the Participant's Account under this Plan.

B
10   16

SECTION 7

CLAIMS FOR BENEFITS

7.1   Presenting Claims for Benefits: A "Claims Administrator" shall be appointed by the Administrator or, absent such appointment, shall be the Administrative Support Manager, Schlumberger Technology Corporation, with such Claims Administrator authorized by the Administrator to conduct the initial review and render a decision as provided in this Section 7.1 for all claims for benefits under the Plan.  Any Participant or Beneficiary of any deceased Participant, or authorized representative (designated in the manner required by the Administrator) of such Participant or Beneficiary (collectively, the "Claimant"), may submit written claim to the Administrator for the payment of any benefit asserted to be due him under the Plan, which shall set forth the nature of the claim and such other information as the Administrator may reasonably request.  Upon the receipt of any claim for benefits required by this Section, the Administrator shall determine whether or not the Claimant is entitled to a benefit hereunder and, if so, the amount thereof, and shall notify the Claimant of its findings, in accordance with the applicable Department of Labor regulations.

The Administrator shall notify the Claimant of its benefits determination within a reasonable time, not to exceed 90 days, after receipt of the claim, unless the Administrator determines that special circumstances require an extension of time, not to exceed 90 days from the end of the initial 90-day period, for processing the claim.  If such an extension of time is required, written notice of the extension shall be furnished to the Claimant prior to the end of the initial 90-day period indicating the special circumstances requiring an extension of time and the date by which the Administrator expects to render its final decision.  The initial 90-day period shall commence at the time the claim is filed with the Administrator, regardless of whether or not all information necessary for the Administrator to make its determination accompanies the filing.  If an extension of the 90-day period is required due to the Claimant's failure to submit such necessary information, such period shall be tolled from the date on which the extension notice is sent to the Claimant until the date the Claimant provides such additional information.

The Administrator shall provide the Claimant with written or electronic notice of its decision to deny a claim, in whole or in part, and such notice shall set forth, in a manner calculated to be understood by the Claimant:

(a)   the specific reason or reasons for the denial;

(b)   specific reference to the pertinent Plan provisions on which the denial is based;

(c)   a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary; and

(d)   a description of the claims review procedure set forth in Section 7.2 hereof and the applicable time limits, including the Claimant's right to bring a civil action under Section 502(a) of ERISA following a denial on review.

7.2     Claims Review Procedure: If the Administrator denies the benefits claim filed by a Claimant under Section 7.1, either in whole or in part, such Claimant shall have the right, to be exercised by written application filed with the Administrator within 60 days after receipt of notice of the denial of his claim to request a review of his claim and entitlement to the benefit applied for and the denial of such benefits. The Claimant may submit written comments, documents, records and other information relating to his claim for benefits. Upon request, and free of charge, the Claimant shall be provided reasonable access to, and copies of, all documents, records and other information relevant to his claim for benefits. The Administrator shall reconsider the claim in light of all such comments, documents and other information submitted by the Claimant, without regard to whether such information had been submitted or considered in the initial review process under Section 7.1. If deemed necessary by the Administrator, in its sole discretion, the Administrator may hold a formal hearing on the benefits claim.

The Administrator shall conduct a full and fair review of the claim and provide the Claimant with written or electronic notice of its final determination within a reasonable time, not to exceed 60 days, after receipt of the Claimant's application for review, unless the Administrator determines that special circumstances require an extension of time, not to exceed 60 days from the end of the initial 60-day period, to review the claim (such as the need to hold a formal hearing). If such an extension of time is required, written notice of the extension shall be furnished to the Claimant prior to the end of the initial 60-day period indicating the special circumstances requiring such an extension and the date by which the Administrator expects to render its decision. The initial 60-day period shall commence at the time the application for review is filed with the Administrator, regardless of whether or not all information necessary for the Administrator to make its determination accompanies the filing. If an extension of the 60-day period is required due to the Claimant's failure to submit such necessary information, such period shall be tolled from the date on which the extension notice is sent to the Claimant until the date the Claimant provides such additional information.

If the Administrator denies the claim on review, either in whole or in part, the notice of final determination shall set forth, in a manner calculated to be understood by the Claimant, the specific reasons for the denial and specific references to the pertinent provisions of the Plan upon which the denial is based, the Claimant's right to receive upon request, free of charge, reasonable access to, and copies of, all relevant documents, records and other information to his claim and the Claimant's right to bring a civil action under Section 502(a) of ERISA. Benefits under this Plan will only be paid if the Administrator decides in its discretion that the Claimant is entitled to them.

7.3     Disputed Benefits: If any dispute still exists between a Participant or a Beneficiary or other party and the Administrator after a review of the claim, or in the event any uncertainty shall develop as to the person to whom payment of any benefit hereunder shall be made, the Trustee may withhold the payment of all or any part of the benefits payable hereunder to the Participant or Beneficiary or other party until such dispute has been resolved by a court of competent jurisdiction or settled by the parties involved.

B
12- 16

SECTION 8

## PLAN ADMINISTRATOR AND FINANCE COMMITTEE

8.1    Plan Administrator: The Plan shall be administered by an Administrative Committee (hereinafter referred to as the "Administrative Committee" or the "Administrator"). The members of the Administrative Committee shall be (1) Director, Compensation and Benefits, Schlumberger Limited, (2) Manager, Employee Benefits North America, Schlumberger Limited, (3) Director, Employee Services, North and South America, Schlumberger Technology Corporation, (4) Manager, Benefit Plan Compliance, Schlumberger Limited, (5) Manager, Policy and Benefits, US, Schlumberger Technology Corporation, (6) Administrative Support Manager, Schlumberger Technology Corporation, along with any other appointment (by title or position) by the Board of Directors, all of whom shall serve at the pleasure of the Board of Directors. The Board of Directors shall have the right to change the title or positions that serve as members of the Administrative Committee at any time and from time to time. The Administrative Committee shall normally consist of at least three persons; however, during interim periods which occur after the resignation or death of a member and before the appointment of such member's successor, the Administrative Committee may temporarily have fewer than three members. For purposes of ERISA, the Administrative Committee shall be the Plan "administrator" and shall be the "named fiduciary" with respect to the general administration of the Plan (except as to the investment of the assets of the Trust Fund).

8.2    Duties, Powers and Procedures of Administrative Committee: The Administrative Committee shall act by unanimous decision of its members at the time in office and such action may be taken either by vote at a meeting or in writing without a meeting. The Administrative Committee shall keep a record of all of its meetings or other actions and shall forward all necessary communications to the Employer, the Trustee and the actuary. The Administrative Committee may adopt such rules, regulations and bylaws as it deems desirable for the conduct of its affairs. The Administrative Committee shall supervise the administration and enforcement of the Plan according to its terms and provisions and shall have all powers necessary to accomplish these purposes and discharge its duties hereunder, including, but not by way of limitation, the power to (i) employ and compensate such accountants, attorneys and other agents and employees as the Administrative Committee may deem necessary or advisable in the proper and efficient administration of the Plan, (ii) construe or interpret the Plan, (iii) determine all questions of eligibility, (iv) reconcile any inconsistency or supply any omitted detail consistent with the general terms of this Plan, and (v) compute the amount and determine the manner and time of payment of all benefits according to the Plan hereunder. The Administrative Committee shall also have the authority to amend the Plan to comply with any legislative change, including any regulations promulgated pursuant to a legislative change, and to maintain the Plan's qualified status under Section 401(a) of the Code, provided that such amendment does not result in any significant increase in cost of maintaining the Plan. Upon written authorization by the Vice President-Personnel of Schlumberger Limited, the Administrative Committee shall have the authority to amend the Plan at any time to specify those persons who are eligible to participate in the Plan, including the right to name an employee group or division of an Affiliate that is eligible to participate in the Plan, provided that any group or division shall not be eligible to participate in more than one qualified defined contribution plan sponsored by the Employer or an Affiliate at any given time. All rules and decisions of the Administrative Committee shall be

uniformly and consistently applied to all Employees in similar circumstances. The Administrative Committee shall be the Plan's agent for the service of legal process at the principal office of the Company.

The Administrative Committee may authorize any one or more of its members or an agent to execute any document or documents on behalf of the Administrative Committee, in which event the Administrative Committee shall notify the Trustee in writing of such action and the name or names of its member or members so designated. The Trustee thereafter shall accept and rely upon any document executed by such member or members as representing the action of the Administrative Committee, until the Administrative Committee shall file with the Trustee a written revocation of such designation.

Upon the approval of all of the members of the Administrative Committee, the Administrative Committee may (i) allocate among any of its members any of the responsibilities of the Administrative Committee under the Plan and Trust Agreement and/or (ii) designate any person, firm or corporation that is not a member of the Administrative Committee to carry out any of the responsibilities of the Administrative Committee under the Plan and/or Trust Agreement. Any such allocation or designation shall be made pursuant to a written instrument executed by all of the members of the Administrative Committee.

8.3    Reporting Responsibilities of Administrator: As administrator of the Plan under ERISA, the Administrator shall file with the appropriate office of the Internal Revenue Service or the Department of Labor all reports, returns and notices required under ERISA, including, but not limited to, the summary Plan description, annual reports and amendments thereof to be filed with the Department of Labor, requests for determination letters, annual reports and registration statements required by Section 6057(a)(2) of the Code.

8.4    Finance Committee: The Board of Directors of Schlumberger Limited shall appoint a Finance Committee (hereinafter referred to as the "Finance Committee") as provided in the Trust Agreement. Such Committee shall consist of at least three persons who shall serve at the pleasure of the Board of Directors of Schlumberger Limited. The Board of Directors of Schlumberger Limited shall likewise fill any vacancies which may arise in said Committee.

8.5    Duties of Finance Committee: The Finance Committee shall direct the Trustee with respect to the general investment policy to be followed in investing the Trust Fund, and shall have such other powers and duties as are set forth in the Trust Agreement. Such directions shall be made by advising the Trustee in writing of the proportions of the Trust Fund to be invested and reinvested in fixed income investments, equity investments and/or other general categories of investments. After receiving such general investment directions, the Trustee shall invest and reinvest the Trust Fund or shall cause the Trust Fund to be invested and reinvested in accordance with the provisions of the Trust Agreement.

8.6    Finance Committee Action: The Finance Committee shall act by a majority of its members at the time in office and such action may be taken either by a vote at a meeting or in writing without a meeting. Written minutes shall be kept of the meetings and actions of the Finance Committee. The Finance Committee may, by such majority action, authorize any one or more of its members to execute any document or documents on behalf of the Finance

Committee, in which event the Finance Committee shall notify the Trustee in writing of such action and the name or names of its members so designated and the Trustee thereafter shall accept and rely upon any document executed by such member or members as representing action by the Finance Committee until such Finance Committee shall file with the Trustee a written revocation of such designation. The Finance Committee shall be entitled to appoint such agents and representatives as it may deem advisable, who may, but need not be, Participants, to keep its records or to assist it in doing any other acts to be done or performed by such Finance Committee.

8.7    **Responsibility, Powers and Limitations:** The judgment of either the Finance Committee or the Administrator on any question arising hereunder or in connection with the Trust Fund shall be binding, final and conclusive upon all parties concerned. The fact that the Administrator or any member of the Finance Committee is a director, officer or shareholder of the Employer and/or any Affiliate, or a Participant hereunder, shall not disqualify him from doing any act or thing which this Plan authorizes or requires him to do as the Administrator or as a member of such Finance Committee, including the right to negotiate and deal with the Employer and/or any Affiliate.

The Administrator and the members of the Finance Committee in the exercise of any discretionary powers given in this Plan or the related Trust Agreement shall not exercise that discretion so as to discriminate in favor of Employees who are officers, shareholders or highly compensated individuals.

The Administrator and the members of the Finance Committee and their respective agents shall be protected in acting upon any notice, resolution, request, consent, order, certificate, report, opinion, statement or other document believed by them to be genuine and to have been signed by the proper party or parties or by a person or persons authorized to act on its or their behalf. The Administrator and the members of the Finance Committee and their respective agents may accept a resolution of the Board of Directors of the Company as conclusive evidence that any resolution has been duly adopted by said Board of Directors and/or that the same is still in full force and effect, and shall be protected in relying upon the opinion of counsel acceptable to the Company for the purpose of giving such opinion.

8.8    **Employer Not Responsible for Actions of Finance Committee or Administrator:** To the extent permitted by law, the Employer shall not be liable for the administration of the Plan or the related Trust or for any losses or liabilities of the Trust which may be incurred in connection with its administration, whether such losses or liabilities are incurred by reason of investment practices of the Trustee and/or the Finance Committee or by reason of any claim or legal process against the Trust on the part of any Participant, or the legal heirs or assigns of any Participant or any person claiming under or through him or any other person whomsoever.

8.9    **Expenses of Administrative Committee and Finance Committee:** The members of the Administrative Committee and the Finance Committee shall serve without compensation, but all expenses of the Administrative Committee shall be paid by the Company and all expenses of the Finance Committee shall be paid by Schlumberger Limited or prorated equitably among the Participating Affiliates.

8.10   Allocation of Responsibility Among Fiduciaries for Plan and Trust Administration: The Board of Directors, the Finance Committee, the Administrator and the Trustee (hereinafter collectively referred to as the "Fiduciaries") shall have only those powers, duties, responsibilities and obligations as are specifically given them under this Plan or the Trust. In general, the Employer shall have the sole responsibility for making the contributions provided for under Sections 3.1 through 3.4.  The Board of Directors shall have the sole authority to appoint and remove the Administrator and to amend or terminate, in whole or in part, this Plan or to terminate the Employer's participation in the Trust.  The Finance Committee or its designated representative shall have the sole authority to appoint and remove any Investment Manager which may be provided for under the Trust, to monitor the performance of the Trustee and any Investment Manager and to establish and maintain the funding policy and method of the Plan, all as more specifically described in the Trust.  The Administrator shall have the sole responsibility for the administration of the Plan, which responsibility is specifically described in this Plan and the Trust.  The Trustee shall have the sole responsibility for the administration of the Trust and shall have exclusive authority and discretion to manage and control the assets held under the Trust except to the extent such authority is reserved to the Finance Committee or is delegated to an Investment Manager, all as specifically provided in the Trust.  Each Fiduciary may rely upon any direction, information or action of another Fiduciary as being proper under this Plan or the Trust, and is not required under this Plan or the Trust to inquire into the propriety of any such direction, information or action.  It is intended under this Plan and the Trust that each Fiduciary shall be responsible for the proper exercise of its own powers, duties, responsibilities and obligations under this Plan and the Trust and shall not be responsible for any act or failure to act of another Fiduciary.  No Fiduciary guarantees the Trust Fund in any manner against investment loss or depreciation in asset value.