EXHIBIT C

AFFIDAVIT OF KIRK TRUJILLO

(3:05-cv-246-TMB)

# SCHLUMBERGER TECHNOLOGY CORPORATION PENSION PLAN

(Established Effective January 1, 1999)

Exhibit C
Page 1 of 18

# SCHLUMBERGER TECHNOLOGY CORPORATION PENSION PLAN

(Established Effective January 1, 1999)

## INDEX

Page

**PART A**

**SCHLUMBERGER TECHNOLOGY CORPORATION PENSION PLAN** . . . . . . . 4

SECTION 1

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SECTION 2

ELIGIBILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SECTION 3

RETIREMENT DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SECTION 4

ANNUAL RETIREMENT BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

SECTION 5

FORM AND AMOUNT OF PENSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

SECTION 6

PENSION PAYMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

SECTION 7

VESTING - RETURN OF CONTRIBUTIONS . . . . . . . . . . . . . . . . . . . . . . . . 21

SECTION 8

DEATH BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Exhibit C

Page 2 of 18

Page

SECTION 9

NON-ALIENATION OF BENEFITS . . . . . 23

SECTION 10

PLAN ADMINISTRATOR AND FINANCE COMMITTEE . . . . . 23

SECTION 11

PENSION TRUST . . . . . 27

SECTION 12

AMENDMENT AND TERMINATION OF PLAN . . . . . 28

SECTION 13

DISSOLUTION, BANKRUPTCY OR MERGER OF EMPLOYER . . . . . 33

SECTION 14

CLAIMS FOR BENEFITS . . . . . 34

SECTION 15

MISCELLANEOUS . . . . . 35

SECTION 16

LIMITATIONS ON BENEFITS . . . . . 37

SECTION 17

TOP-HEAVY PLAN REQUIREMENTS . . . . . 44

**PART B**

**RETIREMENT BENEFITS FOR SALARIED EMPLOYEES OF FAIRCHILD SEMICONDUCTOR CORPORATION** . . . . . 50


Page

SECTION 1

DEFINITIONS . . . . . . . . . . 50

SECTION 2

ELIGIBILITY . . . . . . . . . . 52

SECTION 3

RETIREMENT DATE . . . . . . . . . . 52

SECTION 4

CONTRIBUTIONS BY PARTICIPANTS . . . . . . . . . . 53

SECTION 5

RETIREMENT PENSIONS . . . . . . . . . . 54

SECTION 6

FORM AND AMOUNT OF PENSION . . . . . . . . . . 58

SECTION 7

PENSION PAYMENTS . . . . . . . . . . 63

SECTION 8

VESTED RETIREMENT BENEFITS . . . . . . . . . . 63

SECTION 9

PROVISIONS INCORPORATED BY REFERENCE . . . . . . . . . . 66

**PART C**

**RETIREMENT BENEFITS FOR EAST COAST HOURLY RATED EMPLOYEES OF FAIRCHILD SEMICONDUCTOR CORPORATION** . . . . . . . 67



   Page

SECTION 1

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

SECTION 2

ELIGIBILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

SECTION 3

RETIREMENT DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

SECTION 4

RETIREMENT PENSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

SECTION 5

FORM AND AMOUNT OF PENSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

SECTION 6

PENSION PAYMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

SECTION 7

VESTED RETIREMENT BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

SECTION 8

PROVISIONS INCORPORATED BY REFERENCE . . . . . . . . . . . . . . . . . . . . . . 76

**PART D**

**RETIREMENT BENEFITS FOR BARGAINING UNIT EMPLOYEES OF THE DUMONT ELECTRON TUBES DIVISION OF FAIRCHILD SEMICONDUCTOR CORPORATION** . . . . . . . . . . 77

SECTION 1

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

Page

SECTION 2

PENSION BENEFITS AND RETIREMENT . . . . . . . . . . 78

SECTION 3

CREDITED SERVICE . . . . . . . . . . 80

SECTION 4

CONTRIBUTIONS AND FUNDING . . . . . . . . . . 81

SECTION 5

PROVISIONS INCORPORATED BY REFERENCE . . . . . . . . . . 81

**PART E**

**RETIREMENT BENEFITS FOR HOURLY RATED EMPLOYEES OF FAIRCHILD SEMICONDUCTOR CORPORATION** . . . . . . . 82

SECTION 1

DEFINITIONS . . . . . . . . . . 82

SECTION 2

ELIGIBILITY . . . . . . . . . . 83

SECTION 3

RETIREMENT DATE . . . . . . . . . . 83

SECTION 4

RETIREMENT PENSIONS . . . . . . . . . . 84

SECTION 5

FORM AND AMOUNT OF PENSION . . . . . . . . . . 85

Page

SECTION 6

PENSION PAYMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

SECTION 7

VESTED RETIREMENT BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

SECTION 8

PROVISIONS INCORPORATED BY REFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . 91

**SCHLUMBERGER TECHNOLOGY CORPORATION PENSION PLAN**

(Established Effective January 1, 1999)

PREAMBLE

Schlumberger Technology Corporation, a Texas corporation (the "Company"), has previously established and/or maintains (1) the Retirement Plan for Employees of Schlumberger Well Services and Fairchild Semiconductor Corporation, for eligible employees of SWS-NAM, Inc. and in its Schlumberger Well Services Division and for certain former employees of Fairchild Semiconductor Corporation, a Delaware corporation ("Fairchild"), who participated in certain pension plans previously established and maintained by Fairchild; (2) the Anadrill Pension Plan, for the benefit of eligible employees in its Anadrill Division; (3) the Dowell Pension Plan, for the benefit of eligible employees in its Dowell Division; (4) the Geco-Parkla Pension Plan, for the benefit of eligible employees in its Geco-Parkla Division; (5) the Oilfield Services-Shares Resources Pension Plan, for the benefit of eligible employees in its Oilfield Services-Shared Resources Division; and (6) the Schlumberger Doll Research Pension Plan, for eligible employees at its Schlumberger-Doll Research location in Ridgefield, Connecticut (collectively, the "STC Pension Plans").

International Chandlers, Inc., a Texas corporation, and successor to Sedco Forex Resources, Inc., a Delaware corporation, maintains the Sedco Forex Resources, Inc. Pension Plan, for the benefit of its eligible employees.

Schlumberger Technologies, Inc., a Texas corporation, maintains the Schlumberger Technologies, Inc. Pension Plan, for the benefit of its eligible employees.

Schlumberger Resource Management Services, Inc., a Delaware corporation, maintains (1) the Sangamo Weston Pension Plan, for the benefit of eligible employees in its Electricity Division and Statham Transducer Division; and (2) the Water and Gas USA Pension Plan, for the benefit of eligible employees in its Water Division and Gas Division (collectively, the "SRMS Pension Plans").

Each of the STC Pension Plans, the Sedco Forex Resources, Inc. Pension Plan, the Schlumberger Technologies, Inc. Pension Plan, and the SRMS Pension Plans (collectively, the "Prior Pension Plans") has adopted the Schlumberger Master Pension Trust (the "Trust") to provide a trust to hold and administer funds contributed under each such plan for the exclusive benefit of the employees included under each such plan.

To the extent applicable, effective as of January 1, 1989, the Prior Pension Plans were amended and restated in order to make certain changes required by the Tax Reform Act of the 1986 and to make certain other changes, and subsequently amended thereafter to make other changes.

Effective as of January 1, 1999, the Boards of Directors of the Company, Schlumberger Resource Management Services, Inc., Schlumberger Technologies, Inc. and International Chandlers, Inc., authorized and directed that (i) the Prior Pension Plans, as each is amended immediately prior to January 1, 1999, be consolidated with, merged into, and continued in the form of the Schlumberger Technology Corporation Pension Plan (the "Plan"), which incorporates certain changes required by the Retirement Protection Act of 1994 under the General Agreement on Tariffs and Trades, the Uniformed Services Employment and Reemployment Rights Act, the Small Business Job Protection Act of 1996 and the Tax Reform Act of 1997, and to provide for a continuation of at least substantially identical benefits for the former participants of each of the Prior Pension Plans, (ii) all assets held under the Trust for the benefit of employees in each of the Prior Pension Plans be merged, and (iii) certain other changes be made to the Plan, so that from and after January 1, 1999 such Prior Pension Plans as merged into the Plan shall constitute a "single plan" within the purview of Section 414(l) of the Internal Revenue Code of 1986 (the "Code"), notwithstanding that they may have some differing provisions or benefit schemes, with the Plan being the surviving plan for all legal purposes, including reporting and disclosure under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

The Plan and Trust are intended to meet the requirements of Sections 401(a) and 501(a) of the Code and ERISA, as either may be amended from time to time.

The provisions of the Plan shall apply to a Participant who continues his Service after the Effective Date, and, except as otherwise expressly set forth herein, the rights and benefits, if any, of a Prior Plan Participant (as herein defined) who terminated his Service prior to the Effective Date shall be determined under the provisions of the applicable Prior Plan (as herein defined) in effect on the date his Service terminated.

NOW, THEREFORE, Schlumberger Technology Corporation, Schlumberger Resource Management Services, Inc., Schlumberger Technologies, Inc., and International Chandlers, Inc., hereby amend, restate, consolidate and merge the Prior Plans into, and continues such plans in the form, of the Schlumberger Technology Corporation Pension Plan as herein set forth, effective January 1, 1999, to read as follows:

## INTRODUCTORY STATEMENT

The purpose of this Plan is to provide retirement and incidental benefits for those eligible employees of Schlumberger Technology Corporation, Schlumberger Resource Management Services, Inc., Schlumberger Technologies, Inc., and International Chandlers, Inc., and such other Affiliates (collectively, the "Employer") that adopt the Plan, who complete a period of service and otherwise become eligible hereunder and for certain former employees of Fairchild. Accordingly, the Plan shall be divided into five Parts. Eligibility for, the amount of, the form of and other conditions for benefits under the Plan with respect to the employees of the Employer shall be determined solely by reference to Part A of the Plan. Eligibility for, the amount of, the form of and other conditions for benefits under the Plan with respect to the employees of Fairchild shall be

determined solely by reference to Parts B, C, D and E of the Plan, which may include certain portions of Part A which are specifically included by reference.

**PART A**

**SCHLUMBERGER TECHNOLOGY CORPORATION PENSION PLAN**

SECTION 1

DEFINITIONS

1.1 Active Service: Subject to the Break In Service rules, the period of active employment with the Employer and with Affiliates and any leave of absence granted on a non-discriminatory basis in accordance with recognized and established practices of the Employer or Affiliate, with or without pay; however, the Employer intends to grant leaves of absence solely for military service, for educational purposes, for physical incapacity, for Maternity/Paternity Leave or in accordance with the Family and Medical Leave Act of 1993. All Employees laid off shall be deemed to be on leave of absence status for a period of one year unless they return to Active Service within such period. An Employee's or Participant's Active Service shall commence (or recommence) on the date he first performs an Hour of Service (as defined in Department of Labor Regulation § 2530.200b-2 (Title 29 Code of Federal Regulations Part 2530)). A period of Active Service of an Employee or Participant shall terminate upon the first to occur of (i) his retirement or death, (ii) his quitting or discharge (including while on or upon expiration of a leave of absence), (iii) his deemed date of termination of employment pursuant to his failure to return to Active Service upon the expiration of a leave of absence, or (iv) one year from the date the Employee or Participant is absent from active employment for any reason other than retirement, death, quit, discharge or leave of absence. For purposes of clause (iii) immediately above, a Participant's deemed date of termination of employment shall be the earlier of (a) the expiration date of such leave of absence and (b) one year from the date such leave of absence commenced. Unless a period of Active Service can be disregarded under the Break In Service rules, all periods of Active Service shall be aggregated so that a one-year period of Active Service shall be completed as of the date the Employee or Participant completes 12 months of Active Service. To the extent it would have constituted Service under the applicable Prior Plan, Active Service (1) for Great Land Employees shall include the period of active employment with Great Land Directional Drilling, Inc. or its affiliates prior to September 20, 1993; (2) for Southwest Pump Employees shall include the period of active employment with Southwest Energy Control Systems, Inc. or its affiliates between April 17, 1991 and April 17, 1992; (3) for GTL Employees shall include the period of active employment with Global TeL*Link Corporation or its affiliates between April 1, 1992 and April 1, 1993; (4) for TLA Employees shall include the period of active employment with TLA Technology, Inc. or its affiliates between July 22, 1992 and July 22, 1993; and (5) for POI Employees shall include the period of active employment with Production Operators, Inc. or its affiliates prior to October 1, 1998.

See definition

Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to Qualified Military Service will be provided in accordance with Section 414(u) of the Code.

Exhibit C

Page 11 of 18

1.2     Actuarial Equivalent: With respect to any benefit hereunder, excluding lump sums under Section 6.2, a payment or payments equal in value at date of determination to such benefit when determined actuarially on the basis of a 7% annual rate of interest and the 1984 Unisex Pension Mortality Table rated back three years. For purposes of calculating lump sums under Section 6.2, (i) prior to January 1, 2000, the interest rate used shall not exceed the interest rate used by the Pension Benefit Guaranty Corporation for valuing a lump-sum distribution on plan termination as of the beginning of the Plan Year of distribution (subject to any transitional rules contained in pertinent Treasury Regulations); and (ii) on and after January 1, 2000, the interest rate shall be based upon the annual interest rate on 30-year Treasury securities as specified by the Secretary of the Treasury for the month which occurs two months before the beginning of the Plan Year in which the distribution occurs and the applicable mortality table defined in Section 417(e)(3)(A)(ii)(I) of the Code.

1.3     Administrator: The Administrative Committee designated by and whose functions are specified under Section 10 hereof to serve as the Plan Administrator under ERISA.

1.4     Admissible Compensation: The aggregate direct payments of compensation paid by the Employer to or for an Employee while a Participant during a calendar year, or portion thereof, including normal salary, wages, overtime compensation, commissions, bonuses and salary deferral amounts pursuant to Code Sections 125 and 401(k), if any, but excluding:

(1)     Compensation for employment during any period in which an individual is not an Employee within the meaning of Section 1.11; and

(2)     Any special payments of compensation, including, but not limited to, income arising pursuant to the exercise of a stock option, field meal allowance, early retirement payments, severance payments, pay in lieu of vacation, tuition reimbursement and moving allowances; and

(3)     Payments on behalf of the Participant by the Employer to this or any other pension plan, profit sharing plan, savings plan or to any other employee benefit plan.

Notwithstanding anything herein to the contrary, in no event shall the Admissible Compensation taken into account under the Plan for any Employee during a given Plan Year exceed $160,000, or such other dollar amount as may be prescribed by the Secretary of the Treasury or his delegate, as adjusted in accordance with Code Sections 401(a)(17) and 415(d).

For purposes of determining Annual Retirement Credits under Section 4, a Participant's Admissible Compensation during his period of Qualified Military Service shall be equal to (i) the Admissible Compensation the Participant would have received during his period of Qualified Military Service if he were not in Qualified Military Service, determined based on the rate of pay the Participant would have received from the Employer but for his absence due to such service, or (ii) if the Admissible Compensation the Participant would have received from the Employer during his period of Qualified Military Service is not reasonably certain, then the

after the date such absence first commenced. For purposes of this Section, "Maternity/Paternity Leave" means a temporary cessation from active employment with the Employer or Affiliate (i) by reason of the pregnancy of the individual, (ii) by reason of the birth of the child of the individual, (iii) by reason of the placement of a child with the individual in connection with the adoption of such child by such individual, or (iv) for purposes of caring for such child for a period beginning immediately following such birth or placement. In order for a Participant's absence to qualify as a Maternity/Paternity Leave of Absence, the Participant must furnish the Administrator, in a timely manner, with such information and documentation as the Administrator shall reasonably require to establish that the absence from work is for reasons referred to above and the number of days for which there was such absence.

Moreover, an Employee who is on an authorized leave of absence due to Qualified Military Service shall not incur a Break In Service due to such Qualified Military Service if such Employee subsequently returns to active employment with the Employer no later than (i) the first full regularly scheduled work period on the first full calendar day, plus the expiration of eight (8) hours, after his Qualified Military Service ends, if such Qualified Military Service is for less than 31 days; (ii) 14 days after his Qualified Military Service ends, if such Qualified Military Service is for more than 30 days but less than 180 days; or (iii) 90 days after his Qualified Military Service ends, if such Qualified Military Service is for more than 180 days.

1.9     Code: The Internal Revenue Code of 1986, as amended.

1.10    Company: Schlumberger Technology Corporation, a Texas corporation, or its successor.

1.11    Effective Date: January 1, 1999, the effective date of the Plan as amended and restated herein, except where otherwise specified.

1.12    Employee: Any person employed by and carried on the United States payroll of the Employer, including any "leased employee" (as defined in Code Section 414(n), subject to Code Section 414(n)(5)) performing services for the Employer.

1.13    Employer: The Company, the Electricity, Statham Transducer, Water and Gas Divisions of Schlumberger Resource Management Services, Inc., a Delaware corporation, Schlumberger Technologies, Inc., a Delaware corporation, International Chandlers, Inc., a Texas corporation and any successor to all or substantially all of the property and business of any such company unless otherwise expressly determined at the time of such succession, and any Affiliate which shall adopt this Plan pursuant to the provisions of Section 12.5 and the successors, if any, to such Affiliate. With regard to Schlumberger Resource Management Services, Inc., references to Employer shall also be deemed references to Schlumberger Resource Management Services, Inc. to the extent that Schlumberger Resource Management Services, Inc. exercises the rights or fulfills the obligations of its Electricity, Statham Transducer, Water or Gas Divisions.

1.14    ERISA: Public Law No. 93-406, the Employee Retirement Income Security Act of 1974, as amended from time to time.

SECTION 2

ELIGIBILITY

2.1 Employees Eligible to Participate: Each Employee as of January 1, 1999 who was a Participant in a Prior Plan as in effect on December 31, 1998 shall continue to be a Participant in this Plan from and after the Effective Date. Any other Employee shall become a Participant as of the later of (i) the Effective Date, or (ii) the first day of the month coinciding with or next following the completion of a Year of Eligibility Service; provided, however, that, notwithstanding anything to the contrary in the Plan, any Employee who is (a) covered by a collective bargaining agreement which does not provide for participation in this Plan and under which retirement benefits were the subject of good faith bargaining, (b) a non-resident alien who receives no earned income from the Employer which constitutes income from sources within the United States, (c) classified as a "leased employee" (as defined in Code Section 414(n), subject to Code Section 414(n)(5)) performing services for the Employer, or (d) designated, compensated or otherwise classified or treated as an independent contractor by the Employer or any Affiliate, shall not be eligible to participate in the Plan. A Year of Eligibility Service will only be computed for purposes of eligibility to participate in the Plan. Any Employee who has completed a Year of Eligibility Service with an Affiliate and who transfers to Active Service with the Employer on or after January 1, 1999 shall begin to participate in the Plan on the date he begins Active Service as an eligible Employee of the Employer.

2.2 Re-Employment of Employee: If any Employee whose Active Service has been terminated, whether voluntarily or involuntarily, shall subsequently re-enter the employment of the Employer, his period of Active Service both before and after the termination of his Active Service shall be considered for purposes of determining his eligibility to participate in the Plan following re-employment if he did not incur a Break In Service (as defined in Section 1.8) prior to his re-employment. If the Employee did incur a Break In Service before becoming a Participant in the Plan, then he shall be treated as a new Employee who must complete a Year of Eligibility Service. If such Employee had been a Participant prior to the termination of his Active Service, he shall recommence participation in the Plan immediately upon his recommencement of Active Service.

The period of Active Service earned by a re-employed Participant attributable to his prior period of employment shall always be reinstated for vesting and benefit accrual purposes upon his recommencement of Active Service, unless it can be disregarded under Section 1.8 or Section 6.2.

SECTION 3

RETIREMENT DATE

3.1 Normal Retirement Date: The Normal Retirement Date of a Participant shall be the first day of the month following his 65th birthday.


if the Participant and the Participant's Spouse have waived the Qualified Joint and Survivor Annuity in accordance with Section 5.4.

8.3 Retirement With No Optional Pension: If a Participant who (i) terminated Active Service after attainment of age 55 and had not elected an Optional Pension or (ii) terminated Active Service after completion of five years of Active Service and had not elected an Optional Pension should in either event die prior to the date the first payment of his pension is payable under Section 6.1, his Spouse, if any, shall be entitled to receive the pension such Spouse would have received in accordance with Section 5.4 had such Participant commenced receiving his pension in the form of the Qualified Joint and Survivor Annuity on the first day of the month in which his death occurred or in which he would have attained age 55, whichever is later. However, the Spouse of a deceased Participant entitled to a survivor's annuity under this Section may elect to receive early payment of such survivor's annuity at any time after the Participant's death in which event the monthly amount payable shall be an amount equal to the Actuarial Equivalent of the survivor annuity otherwise payable when the Participant would have attained age 55. In addition, such benefit shall be subject to the cash-out rules of Section 6.2 hereof.

SECTION 9

NON-ALIENATION OF BENEFITS

Except as otherwise provided below and with respect to certain judgments and settlements pursuant to Section 401(a)(13) of the Code, none of the benefits, payments, proceeds, claims or rights of any Participant hereunder shall be subject to any claim of any creditor of any Participant, and in particular the same shall not be subject to attachment or garnishment or other legal process by any creditor of any Participant, nor shall any Participant have any right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments or proceeds which he may expect to receive, contingently or otherwise, under the Plan. The provisions of this Section shall not apply to a "qualified domestic relations order" defined in Section 414(p) of the Code, and such other domestic relations orders permitted to be treated as qualified domestic relations orders by the Plan Administrator under the provisions of the Retirement Equity Act of 1984. The Administrator shall establish a written procedure to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders. Further, to the extent provided under a "qualified domestic relations order," a former Spouse of a Participant shall be treated as the Spouse or surviving Spouse for all purposes of the Plan.

SECTION 10
PLAN ADMINISTRATOR AND FINANCE COMMITTEE

10.1 Plan Administrator: The Plan shall be administered by an Administrative Committee (hereinafter referred to as the "Administrative Committee" or the "Administrator"). The members of the Administrative Committee shall be (1) the Manager - Employee Services, Oilfield Services, (2) the Manager, Benefits, Schlumberger Limited, New York, (3) the Manager, Benefit Plan

Exhibit C
Page 15 of 18

Compliance, Schlumberger Limited, New York, (4) the Director Personnel, Schlumberger Limited, New York, (5) Manager, Work-Family Solutions, Oilfield Services, and (6) Manager, Benefits, RMS and Test & Transactions, along with any other appointment (by title or position) by the Board of Directors, all of whom shall serve at the pleasure of the Board of Directors. The Board of Directors shall have the right to change the title or positions that serve as members of the Administrative Committee at any time and from time to time. The Administrative Committee shall normally consist of at least three persons; however, during interim periods which occur after the resignation or death of a member and before the appointment of such member's successor, the Administrative Committee may temporarily have fewer than three members. For purposes of ERISA, the Administrative Committee shall be the Plan "administrator" and shall be the "named fiduciary" with respect to the general administration of the Plan (except as to the investment of the assets of the Trust Fund).

10.2 Duties, Powers and Procedures of Administrative Committee: The Administrative Committee shall act by unanimous decision of its members at the time in office and such action may be taken either by vote at a meeting or in writing without a meeting. The Administrative Committee shall keep a record of all of its meetings or other actions and shall forward all necessary communications to the Employer, the Trustee and the actuary. The Administrative Committee may adopt such rules, regulations and bylaws as it deems desirable for the conduct of its affairs. The Administrative Committee shall supervise the administration and enforcement of the Plan according to its terms and provisions and shall have all powers necessary to accomplish these purposes and discharge its duties hereunder, including, but not by way of limitation, the power to (i) employ and compensate such accountants, attorneys and other agents and employees as the Administrative Committee may deem necessary or advisable in the proper and efficient administration of the Plan, (ii) construe or interpret the Plan, (iii) determine all questions of eligibility, (iv) reconcile any inconsistency or supply any omitted detail consistent with the general terms of this Plan, and (v) compute the amount and determine the manner and time of payment of all benefits according to the Plan hereunder. The Administrative Committee shall also have the authority to amend the Plan to comply with any legislative change, including any regulations promulgated pursuant to a legislative change, and to maintain the Plan's qualified status under Section 401(a) of the Code, provided that such amendment does not result in any significant increase in cost of maintaining the Plan. Upon written authorization by the Vice President-Personnel of Schlumberger Limited, the Administrative Committee shall have the authority to amend the Plan at any time to specify those persons who are eligible to participate in the Plan, including the right to name an employee group or division of an Affiliate that is eligible to participate in the Plan, provided that any group or division shall not be eligible to participate in more than one qualified defined benefit plan sponsored by the Employer or an Affiliate at any given time. All rules and decisions of the Administrative Committee shall be uniformly and consistently applied to all Employees in similar circumstances. The Administrative Committee shall be the Plan's agent for the service of legal process at the principal office of the Employer.

The Administrative Committee may authorize any one or more of its members or an agent to execute any document or documents on behalf of the Administrative Committee, in which event the Administrative Committee shall notify the Trustee in writing of such action and the name or names of its member or members so designated. The Trustee thereafter shall accept and rely upon any document executed by such member or members as representing the action of the Administrative

Committee, until the Administrative Committee shall file with the Trustee a written revocation of such designation.

Upon the approval of all of the members of the Administrative Committee, the Administrative Committee may (i) allocate among any of its members any of the responsibilities of the Administrative Committee under the Plan and Trust Agreement and/or (ii) designate any person, firm, or corporation that is not a member of the Administrative Committee to carry out any of the responsibilities of the Administrative Committee under the Plan and/or Trust Agreement. Any such allocation or designation shall be made pursuant to a written instrument executed by all of the members of the Administrative Committee.

10.3 Reporting Responsibilities of Administrator: As administrator of the Plan under ERISA, the Administrator shall file with the appropriate office of the Internal Revenue Service, the Department of Labor or the Pension Benefit Guaranty Corporation all reports, returns and notices required under ERISA, including, but not limited to, the summary plan description (upon request), annual reports and amendments thereof to be filed with the Department of Labor, requests for determination letters, annual reports and registration statements required by Code Section 6057(a), and including reports and notices of reportable events to the Pension Benefit Guaranty Corporation required by Section 4043 of ERISA.

10.4 Finance Committee: The Board of Directors of Schlumberger Limited shall appoint a Finance Committee as provided in the Trust Agreement. Such Committee shall consist of at least three persons who serve at the pleasure of the Board of Directors of Schlumberger Limited. The Board of Directors of Schlumberger Limited shall likewise fill any vacancies which may arise in said Committee.

10.5 Duties of Finance Committee: The Finance Committee shall direct the Trustee with respect to the general investment policy to be followed in investing the Trust Fund, and shall have such other powers and duties as are set forth in the Trust Agreement. Such directions shall be made by advising the Trustee in writing of the proportions of the Trust Fund to be invested and reinvested in fixed income investments, equity investments and/or other general categories of investments. After receiving such general investment directions, the Trustee shall invest and reinvest the Trust Fund or shall cause the Trust Fund to be invested and reinvested in accordance with the provisions of the Trust Agreement.

10.6 Finance Committee Action: The Finance Committee shall act by a majority of its members at the time in office and such action may be taken either by vote at a meeting or in writing without a meeting. Written minutes shall be kept of the meetings and actions of the Finance Committee. The Finance Committee may, by such majority action, authorize any one or more of its members to execute any document or documents on behalf of the Finance Committee, in which event the Finance Committee shall notify the Trustee in writing of such action and the name or names of its members so designated and the Trustee thereafter shall accept and rely upon any document executed by such member or members as representing action by the Finance Committee until such Finance Committee shall file with the Trustee a written revocation of such designation. The Finance Committee shall be entitled to appoint such agents and representatives as it may deem

advisable, who may, but need not, be Participants, to keep its records or to assist it in doing any other acts to be done or performed by such Finance Committee.

10.7 Responsibility, Powers and Limitations: The judgment of either the Finance Committee or the Administrator on any question arising hereunder or in connection with the Trust Fund shall be binding, final and conclusive upon all parties concerned. The fact that the Administrator or any member of the Finance Committee is a director, officer or shareholder of the Employer and/or any Affiliate, or a Participant hereunder, shall not disqualify him from doing any act which this Plan authorizes or requires him to do as the Administrator or as a member of such Finance Committee, including the right to negotiate and deal with the Employer and/or any Affiliate.

The Administrator and the members of the Finance Committee in the exercise of any discretionary powers given in this Plan or the related Trust Agreement shall not exercise that discretion so as to discriminate in favor of Employees who are officers, shareholders or highly compensated individuals.

The Administrator and the members of the Finance Committee and their respective agents shall be protected in acting upon any notice, resolution, request, consent, order, certificate, report, opinion, statement or other document believed by them to be genuine and to have been signed by the proper party or parties or by a person or persons authorized to act on its or their behalf. The Administrator and the members of the Finance Committee and their respective agents may accept a resolution of the Board of Directors as conclusive evidence that any resolution has been duly adopted by said Board of Directors and/or that the same is still in full force and effect, and shall be protected in relying upon the opinion of counsel acceptable to the Employer for the purpose of giving such opinion.

10.8 Employer Not Responsible for Actions of Finance Committee or Administrator: To the extent permitted by law, the Employer shall not be liable for the administration of the Plan or the related Trust or for any losses or liabilities of the Trust which may be incurred in connection with its administration, whether such losses or liabilities are incurred by reason of investment practices of the Trustee and/or the Finance Committee or by reason of any claim or legal process against the Trust on the part of any Participant, or the legal heirs or assigns of any Participant or any person claiming under or through him or any other person whomsoever.

10.9 Expenses of Administrative Committee and Finance Committee: The members of the Administrative Committee and the Finance Committee shall serve without compensation, but all expenses of the Administrative Committee shall be paid by the Employer, and all expenses of the Finance Committee shall be paid by Schlumberger Limited or prorated equitably among all Affiliates participating under the Trust Agreement.

10.10 Allocation of Responsibility Among Fiduciaries for Plan and Trust Administration: The Board of Directors, the Finance Committee, the Administrator and the Trustee (collectively referred to as the "Fiduciaries") shall have only those powers, duties, responsibilities and obligations as are specifically given them under this Plan or the Trust. In general, the Employer shall have the sole responsibility for making the contributions necessary to provide the benefits under the Plan as

Exhibit C
Page 18 of 18