EXHIBIT D

AFFIDAVIT OF KIRK TRUJILLO

(3:05-cv-246-TMB)

# SCHLUMBERGER
## CAFETERIA, HEALTH CARE SPENDING ACCOUNT AND DEPENDENT CARE SPENDING ACCOUNT PLAN

### As Amended and Restated Effective January 1, 2000

Exhibit D
Page 1 of 21

# TABLE OF CONTENTS

**ARTICLE I - DEFINITIONS** ................................................................. 3

  1.1    ADMINISTRATOR ................................................................ 3
  1.2    AFFILIATE OR AFFILIATED EMPLOYER ............................. 3
  1.3    ANNUAL ENROLLMENT ..................................................... 3
  1.4    APPENDICES ..................................................................... 3
  1.5    BENEFIT OR BENEFIT PROGRAM ..................................... 3
  1.6    CASH BENEFIT ................................................................. 4
  1.7    CODE ................................................................................ 4
  1.8    COMMITTEE ...................................................................... 4
  1.9    COMPANY ......................................................................... 4
  1.10  COMPENSATION ............................................................... 4
  1.11  DEPENDENT ...................................................................... 4
  1.12  DEPENDENT CARE SPENDING ACCOUNT ........................ 4
  1.13  ELIGIBLE EMPLOYEE ........................................................ 4
  1.14  EMPLOYEE ........................................................................ 4
  1.15  EMPLOYER ........................................................................ 5
  1.16  ERISA .............................................................................. 5
  1.17  FINANCE COMMITTEE ....................................................... 5
  1.18  GROUP HEALTH CARE PLAN CONTRIBUTIONS .................. 5
  1.19  HEALTH CARE SPENDING ACCOUNT ................................ 5
  1.20  PARTICIPANT .................................................................... 5
  1.21  PLAN ................................................................................ 5
  1.22  PLAN YEAR ....................................................................... 5
  1.23  SALARY REDIRECTION ...................................................... 6
  1.24  SALARY REDIRECTION AGREEMENT ................................. 6
  1.25  SPOUSE ........................................................................... 6

**ARTICLE II - ELIGIBILITY AND PARTICIPATION** ........................... 7

  2.1    GENERAL .......................................................................... 7
  2.2    ANNUAL ENROLLMENT ..................................................... 7
  2.3    BENEFIT COMMENCEMENT ............................................... 7
  2.4    TERMINATION ................................................................... 8
  2.5    PARTICIPANTS TO FURNISH REQUIRED INFORMATION ....... 9
  2.6    DISCRIMINATION IN FAVOR OF HIGHLY COMPENSATED ..... 9
  2.7    OTHER DISCRIMINATION ................................................... 9
  2.8    TERMINATION OF EMPLOYMENT ...................................... 10
  2.9    DEATH .............................................................................. 10

**ARTICLE III - CONTRIBUTIONS TO THE PLAN** ........................... 11

  3.1    SALARY REDIRECTION ...................................................... 11
  3.2    APPLICATION OF CONTRIBUTIONS .................................... 11
  3.3    PERIODIC CONTRIBUTIONS ............................................... 12

**ARTICLE IV - BENEFITS** ................................................................. 13

  4.1    BENEFIT OPTIONS ........................................................... 13

Exhibit D
Page 2 of 21

4.2     DEPENDENT CARE SPENDING ACCOUNT ........................................ 13
4.3     HEALTH CARE SPENDING ACCOUNT ............................................. 13
4.4     GROUP HEALTH CARE PLAN CONTRIBUTIONS ............................. 13
4.5     CASH BENEFIT ............................................................................ 13
4.6     FAILURE TO ELECT ..................................................................... 14
4.7     NONDISCRIMINATION REQUIREMENTS .......................................... 14

ARTICLE V - PARTICIPANT ELECTIONS .......................................... 15

5.1     INITIAL ELECTIONS ...................................................................... 15
5.2     SUBSEQUENT ANNUAL ELECTIONS ............................................. 15
5.3     FAILURE TO ELECT ..................................................................... 15
5.4     CHANGE OF ELECTIONS .............................................................. 15
5.5     QUALIFIED CHANGE IN STATUS .................................................. 16

ARTICLE VI - DEPENDENT CARE SPENDING ACCOUNT ..................... 17

6.1     ESTABLISHMENT OF THE PROGRAM .............................................. 17
6.2     DEFINITIONS ............................................................................... 17
6.3     DEPENDENT CARE SPENDING ACCOUNTS .................................... 18
6.4     INCREASES IN DEPENDENT CARE SPENDING ACCOUNTS ............... 18
6.5     DECREASES IN DEPENDENT CARE SPENDING ACCOUNTS .............. 18
6.6     ALLOWABLE DEPENDENT CARE ASSISTANCE REIMBURSEMENT ....... 18
6.7     ANNUAL STATEMENT OF BENEFITS .............................................. 19
6.8     FORFEITURES ............................................................................. 19
6.9     LIMITATION ON PAYMENTS .......................................................... 19
6.10    NONDISCRIMINATION REQUIREMENTS .......................................... 19
6.11    DEPENDENT CARE SPENDING ACCOUNT PROGRAM CLAIMS ........... 19

ARTICLE VII - HEALTH CARE SPENDING ACCOUNT ......................... 21

7.1     ESTABLISHMENT OF THE PROGRAM .............................................. 21
7.2     DEFINITIONS ............................................................................... 21
7.3     HEALTH CARE SPENDING ACCOUNTS .......................................... 21
7.4     INCREASES IN HEALTH CARE SPENDING ACCOUNTS ..................... 21
7.5     DECREASES IN HEALTH CARE SPENDING ACCOUNTS .................... 22
7.6     ALLOWABLE HEALTH CARE REIMBURSEMENT ............................... 22
7.7     ANNUAL STATEMENT OF BENEFITS .............................................. 22
7.8     FORFEITURES ............................................................................. 22
7.9     LIMITATION ON PAYMENTS .......................................................... 22
7.10    NONDISCRIMINATION REQUIREMENTS .......................................... 22
7.11    HEALTH CARE SPENDING ACCOUNT PROGRAM CLAIMS ................ 23
7.12    UNIFORMED SERVICE UNDER USERRA ........................................ 24

ARTICLE VIII - GROUP HEALTH CARE PLAN CONTRIBUTIONS .......... 25

8.1     PROCEDURE FOR AND EFFECT OF PARTICIPATION ........................ 25
8.2     ELECTION OF BENEFITS ............................................................... 25
8.3     NONDISCRIMINATION .................................................................. 25
8.4     UNIFORMED SERVICE UNDER USERRA ........................................ 25
8.5     HIPAA ....................................................................................... 26

ARTICLE IX - ERISA PROVISIONS ................................................. 27

9.1     PRESENTING CLAIMS FOR BENEFITS ........................................... 27

Exhibit     D
Page  3  of  21

9.2   CLAIMS REVIEW PROCEDURE ..................................................... 27
9.3   FORFEITURE AND APPLICATION OF BENEFIT PLAN SURPLUS .............. 29
9.4   NAMED FIDUCIARY .................................................................. 29
9.5   SUMMARY PLAN DESCRIPTIONS.................................................. 29

## ARTICLE X - ADMINISTRATION .................................................. 30

10.1   PLAN ADMINISTRATOR ............................................................ 30
10.2   FINANCE COMMITTEE............................................................. 30
10.3   RECORDS OF ADMINISTRATIVE COMMITTEE ................................. 30
10.4   ADMINISTRATIVE COMMITTEE ACTION ....................................... 30
10.5   DUTIES AND ACTION OF FINANCE COMMITTEE ............................. 31
10.6   COMMITTEE MEMBER DISQUALIFICATION...................................... 31
10.7   COMPENSATION, EXPENSES AND ADVISERS OF THE COMMITTEES...... 32
10.8   LIABILITY OF THE COMMITTEES ................................................ 32
10.9   COMMITTEE DETERMINATIONS................................................... 32
10.10  INFORMATION FROM EMPLOYER................................................ 33
10.11  GENERAL POWERS OF ADMINISTRATIVE COMMITTEE..................... 33
10.12  UNIFORM ADMINISTRATION ..................................................... 33
10.13  REPORTING RESPONSIBILITIES.................................................. 33
10.14  DISCLOSURE RESPONSIBILITIES ................................................ 34
10.15  ALLOCATION OF RESPONSIBILITY AMONG FIDUCIARIES FOR PLAN ...... 34
10.16  ANNUAL AUDIT .................................................................... 35

## ARTICLE XI - ADOPTION, AMENDMENT OR TERMINATION OF PLAN 36

11.1   ADOPTIVE INSTRUMENT ......................................................... 36
11.2   AMENDMENT OF THE PLAN AND BENEFIT PROGRAMS ..................... 36
11.3   ACCEPTANCE OR REJECTION OF AMENDMENT BY EMPLOYERS.......... 37
11.4   TERMINATION OF BENEFIT PROGRAM ......................................... 37
11.5   TERMINATION OF THE PLAN ..................................................... 37

## ARTICLE XII - COMPLIANCE WITH OTHER LAWS AND REGULATIONS 38

12.1   QUALIFIED CHANGE IN STATUS.................................................. 38
12.2   COBRA CONTINUATION COVERAGE............................................ 39
12.3   UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT.......... 39
12.4   FAMILY AND MEDICAL LEAVE ACT ............................................ 40

## ARTICLE XIII - MISCELLANEOUS.................................................. 41

13.1   GENDER AND NUMBER........................................................... 41
13.2   WRITTEN DOCUMENTS............................................................ 41
13.3   PARTICIPANT'S RIGHTS........................................................... 41
13.4   NO GUARANTEE OF TAX CONSEQUENCES.................................... 41
13.5   INDEMNIFICATION OF EMPLOYER BY PARTICIPANTS ...................... 41
13.6   FUNDING ............................................................................ 42
13.7   GOVERNING LAW .................................................................. 42
13.8   INVALIDITY OF PARTICULAR PROVISIONS..................................... 42
13.9   CAPTIONS ........................................................................... 42
13.10  TERMS OF EMPLOYMENT ........................................................ 43
13.11  NON-ALIENATION OF BENEFITS ................................................ 43
13.12  QUALIFIED MEDICAL CHILD SUPPORT ORDER... ERROR! BOOKMARK NOT DEFINED.
13.13  PAYMENTS IN SATISFACTION OF CLAIMS OF RECIPIENTS ................. 43

Exhibit D
Page 4 of 21

13.14  ACCEPTANCE OF TERMS AND CONDITIONS OF PLAN AND BENEFIT PROGRAM BY
      PARTICIPANT ........................................................................... 43
13.15  EVIDENCES OF ACTIONS BY THE COMPANY OR EMPLOYERS ............................ 44

**APPENDIX A**     **Dependent Care Spending Account Summary Plan Description**

**APPENDIX B**     **Health Care Spending Account Summary Plan Description**

**APPENDIX C**     **ERISA Provisions of Summary Plan Description**

Exhibit D
Page 5 of 21

## Schlumberger Cafeteria, Health Care Spending Account and Dependent Care Spending Account Plan

WHEREAS, the Schlumberger Cafeteria Plan (the "Plan") was adopted by Schlumberger Austin Systems Center effective January 1, 1995 to provide benefits as set forth in Internal Revenue Code Section 125; and

WHEREAS, the Plan was amended effective January 1, 1996 to, among other things, include additional Employers and add dependent care benefits as set forth in Internal Revenue Code Section 129; and

WHEREAS, the Plan name was changed effective January 1, 1996 to the "Schlumberger Cafeteria and Dependent Care Plan"; and

WHEREAS, Schlumberger Technology adopted the Plan effective August 1, 1996; and

WHEREAS, Section 9.1 of the Plan allows the Employer to amend the Plan from time to time; and

WHEREAS, the Employer has substantially revised this Plan to include additional benefits allowed under Sections 125 and 129 of the Internal Revenue Code ("Code"), and said benefits have been extended to additional employees within the controlled group of corporations; and

WHEREAS, Schlumberger Technology Corporation, a Texas corporation (the "Company") and certain Affiliates (as hereinafter defined) now wish to execute a restated Plan document incorporating and extending these Benefits; and

WHEREAS, the Company wishes to make the summary plan descriptions as set forth in the Appendices, an integral part of the Plan;

NOW, THEREFORE, effective January 1, 2000, the Company hereby revises and restates the Schlumberger Cafeteria and Dependent Care Plan in its entirety, and renames it the Schlumberger Cafeteria, Health Care Spending Account and Dependent Care Spending Account Plan.

Exhibit D
Page 6 of 21

## PURPOSE

The intention of the Company is that the Plan qualify as a "Cafeteria Plan" within the meaning of Section 125 of the Code, and a "Dependent Care Plan" within the meaning of Section 129 of the Code, and that the benefits which an Employee elects to receive under the Plan be taxed or not taxed, depending on the Employee's election, as required under Sections 125(a), 129 and other applicable sections of the Code.

Exhibit D
Page 7 of 21

## ARTICLE I - Definitions

Unless otherwise listed in this Section, terms used in the Appendices shall have the meaning defined therein. In case of a discrepancy between the definition of a term used in the Appendices and the Plan document, the Plan document definition shall control. If a term is not defined in either the Appendices or the Plan document, its usual and common meaning shall be applied.

Words used in this Plan in the singular shall include the plural and in the plural the singular, and the gender of words used shall be construed to include whichever may be appropriate under any particular circumstances of the masculine, feminine or neuter genders.

1.1    Administrator

   means the Health Care Administrative Committee appointed by the Company in accordance with the Schlumberger Group Health Care Plan to act as administrator of this Plan and to perform the duties described in Article X of this Plan.

1.2    Affiliate or Affiliated Employer

   means the Employer and any corporation which is a member of a controlled group of corporations (as defined in Code Section 414(b)) which includes the Employer; and any trade or business (whether or not incorporated) which is under common control (as defined in Code Section 414(c)) with the Employer and any other entity required to be aggregated with the Employer pursuant to Treasury regulations under Code.

1.3    Annual Enrollment

   means the period of time set out in Section 2.2 during which Employees may enroll in Benefit Programs for the next Plan Year.

1.4    Appendices

   means the summary plan descriptions of Benefit Programs adopted under the Plan which shall be attached to the Plan as appendices from time to time.

1.5    Benefit or Benefit Program

   means any of the optional benefit choices available to a Participant as set forth in Section 4.1.  The summary plan descriptions of the Benefit Programs set forth in 4.1(a) and 4.1(b) shall be included as Appendices to the Plan, and shall be an integral part of this document.  References herein to the terms of a Benefit Program shall include reference to the applicable Appendix.

Exhibit D
Page 8 of 21

1.6    Cash Benefit

means the Benefit set forth in Section 4.5.

1.7    Code

means the Internal Revenue Code of 1986, as amended or replaced from time to time.

1.8    Committee

means the Administrative Committee or the Finance Committee as the context may indicate.

1.9    Company

means Schlumberger Technology Corporation, a Texas corporation, its predecessors and successors.

1.10    Compensation

means the total cash remuneration received by the Participant from the Employer during a Plan Year prior to any reductions pursuant to a Salary Redirection Agreement authorized hereunder. Compensation shall include overtime, commissions and bonuses.

1.11    Dependent

means any individual who qualifies as a Participant's dependent under Code Section 152 for purposes of the Dependent Care Spending Account (Section 4.2) or the Health Care Spending Account (Section 4.3), or who qualifies as a "Dependent" as defined under the Schlumberger Group Health Care Plan for the purpose of Group Health Care Plan Contributions.

1.12    Dependent Care Spending Account

means the Benefit set forth in Article VI.

1.13    Eligible Employee

means an Employee who is eligible to participate in the Schlumberger Group Health Care Plan.

1.14    Employee

means any person who is employed by an Employer and carried on the Employer's U.S. payroll. The term Employee shall not include any person paid through invoices submitted by the person, and excludes any person who is employed in a class designated by the Employer as "independent

Exhibit  D
Page  9  of  21

contractor" regardless of whether the Internal Revenue Service deems such person a "common law employee" subject to withholding.    The term Employee shall not include leased employees within the meaning of Code Section 414(n)(2).

1.15    Employer

means Schlumberger Technology Corporation, a Texas corporation, its predecessors and successors, and any Affiliate which shall adopt this Plan pursuant to the provisions of Article XI hereof, and the successors, if any, to such Affiliate for so long as the successors remain Affiliates.

1.16    ERISA

means the Employee Retirement Income Security Act of 1974, as amended from time to time.

1.17    Finance Committee

means the Finance Committee appointed by Schlumberger Limited to act as a named Fiduciary under the Plan and any trust agreement to perform the duties specified in Article X of the Plan and the trust agreement, if any.

1.18    Group Health Care Plan Contributions

means the Benefit  set forth in Article VIII.

1.19    Health Care Spending Account

means the Benefit  set forth in Article VII.

1.20    Participant

means any Employee who is eligible to participate in a Benefit Program, and elects to become a Participant in that Benefit Program pursuant to Article II and has not, for any reason, become ineligible to participate further in the Plan.

1.21    Plan

means  this instrument, including  all amendments thereto.  Effective January 1, 2000, the Plan shall be known as the Schlumberger Cafeteria, Health Care Spending Account and Dependent Care Spending Account Plan.

1.22    Plan Year

means the 12–month period beginning each January 1st and ending December 31st. The Plan Year shall be the coverage period for the Benefits

Exhibit  D
Page  10  of  21

provided for under this Plan.   In the event a Participant commences participation during a Plan Year, the initial coverage period shall be that portion of the Plan Year commencing on such Participant's date of entry and ending on the last day of such Plan Year.

1.23   Salary Redirection

means the contributions made by the Employer on behalf of Participants pursuant to Section 3.1. These contributions shall be applied in accordance with Participant elections under Section 4.1.

1.24   Salary Redirection Agreement

means an agreement between the Participant and an Employer under which the Participant agrees to reduce Compensation or to forego all or part of the increases in such Compensation and to have such amounts contributed by the Employer to the Plan on the Participant's behalf, pursuant to Section 3.1, in the Dependent Care Spending Account, the Health Care Spending Account and/or for Group Health Care Plan Contributions, and shall include any electronic elections made by the Participant on the Schlumberger Automated Benefits Link system.  The Salary Redirection Agreement shall apply only to Compensation that has not been actually or constructively received by the Participant as of the date of the agreement (after taking this Plan and Code Section 125 into account) and subsequently does not become currently available to the Participant.

1.25   Spouse

means the legally married husband or wife of a Participant, unless legally separated by court decree. "Spouse" shall also mean the common law husband or wife of a Participant, provided the couple resides in a state where common law marriages are legal, the couple follows all the legal requirements of their state to be deemed common law spouses, and proof of the relationship is provided to the Administrator that is satisfactory to it, in its sole discretion.



## ARTICLE II - ELIGIBILITY AND PARTICIPATION

2.1    General

The information in this Article is intended to provide additional detail which may not be set out in Appendices. Any provision of a Benefit Program which is not consistent with a provision of this Article II, shall govern over the inconsistent provision of any Appendix.

Eligibility for Benefits under the Health Care Spending Account and the Dependent Care Spending Account shall be as described in the applicable Appendices. Each Eligible Employee is eligible for Benefits in the form of Group Health Care Plan Contributions. Each Employee is eligible for a Cash Benefit. Participation in each Benefit Program shall be voluntary.

2.2    Annual Enrollment

At the end of each calendar year, the Employer will hold an Annual Enrollment period for the following Plan Year during which Employees may elect Benefit Program coverages for which they are eligible. The annual enrollment period shall be held in the fourth quarter of the calendar year prior to the Plan Year for which participation shall be in effect, and shall be not less than 21 calendar days in length. An Employee who elects to be covered under the Plan will have coverage effective as of January 1 of the year following the close of the annual enrollment period.

Changes to such Benefit Program elections shall only be permitted on account of a Qualified Change in Status, as set forth in Section 5.5, or during a subsequent Annual Enrollment period.

2.3    Benefit Commencement

(a)    Group Health Care Plan Contributions for an Employee commence the later of:

(i)    the day that Schlumberger Group Health Care Plan coverage commences for the applicable Plan Year; or

(ii)    the date the Employee's participation would have commenced except for the application of Section 2.3(d)(i) or Section 2.3(d)(ii) of this Plan.

(b)    Benefits other than Group Health Care Plan Contributions for an Employee shall commence on the later of:

(i)    the first day the Participant is Actively at Work; or



## ARTICLE IX - ERISA PROVISIONS

9.1    <u>Presenting Claims for Benefits</u>

Any Participant may request, in writing submitted to the Administrative Committee, or it's designee, the payment of any benefit claimed to be due to or on behalf of such Participant hereunder within the time prescribed in the controlling Benefit Program.  Such application shall set forth the nature of the claim and such other information as the Administrative Committee or its designee may reasonably request.  Within a reasonable period of time following the receipt of any application for Benefits, the Administrative Committee or its designee shall determine whether or not the Participant involved is entitled to a Benefit hereunder and, if so, the amount thereof and shall notify the claimant of its findings.

If a claim is wholly or partially denied, the Administrative Committee or its designee shall so notify the claimant within ninety (90) days after receipt of the claim by the Administrative Committee or its designee, unless special circumstances require an extension of time for processing the claim.  If such an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the end of the initial 90-day period.  In no event shall such extension exceed a period of ninety (90) days from the end of such initial period.  The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Administrative Committee or its designee expects to render its final decision.  Notice of the decision to deny a claim in whole or in part shall be set forth in a manner calculated to be understood by the claimant and shall contain the following:

(i)     the specific reason or reasons for the denial;

(ii)    specific reference to the pertinent Plan or Benefit Program provisions on which the denial is based;

(iii)   a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(iv)    an explanation of the claims review procedures.

If notice of denial is not furnished, and if the claim is not granted within the period of time set forth above, the claim shall be deemed denied for purposes of proceeding to the next review stage.

9.2    <u>Claims Review Procedure</u>

(a)     Generally

If an application filed by a Participant or Beneficiary under Section 9.1 above shall result in a denial of the Benefit applied for, either in whole or in part, such applicant shall have the right, to be exercised

by written application filed with the Administrative Committee or its designee, or an Insurer engaged to provide administrative claims services, within sixty (60) days after receipt of notice of the denial of his application or, if no such notice has been given, within sixty (60) days after the application is deemed denied under Section 9.1, to request the review of his application and of his entitlement to the Benefit applied for. Such request for review may contain such additional information and comments as the applicant may wish to present. Within sixty (60) days after receipt of any such request for review, the Administrative Committee or its designee, or Insurer shall reconsider the application for the Benefit in light of such additional information and comments as the applicant may have presented, and if the applicant shall have so requested, shall afford the applicant or his designated representative a hearing before the Administrative Committee or its designee or the Insurer, and shall also permit the applicant or his designated representative to review pertinent documents in its possession, including copies of the Plan and Benefit Program documents and information provided by the Company or other Employer relating to the applicant's entitlement to such Benefit. The Administrative Committee or its designee, or Insurer shall make a final determination with respect to the applicant's application for review as soon as practicable, and in any event not later than sixty (60) days after the receipt of the aforesaid request for review, except that under special circumstances, such as necessity for holding a hearing, such 60-day period may be extended to the extent necessary, but in no event beyond the expiration of one hundred and twenty (120) days after receipt by the Administrative Committee or its designee, or Insurer of such request for review. If such an extension of time for review is required because of special circumstances, written notice of the extension shall be furnished to applicant prior to the commencement of the extension. Notice of such final determination shall be furnished to the applicant in writing, in a manner calculated to be understood by him, and shall set forth the specific reasons for the decisions and specific references to the pertinent provisions of the Plan and/or Benefit Program upon which the decision is based. If the decision on review is not furnished within the time period set forth above, the claim shall be deemed denied on review.

(b)     Physician's Advice

The Administrative Committee, its designee or Insurer shall have the right to appoint a non-involved Physician to advise it on appeals with respect to, among other things, whether a procedure or course of treatment is not a Covered Service because it is:

    (i)     experimental in nature;

    (ii)    not medically necessary;

    (iii)   cosmetic;

D Page 14 of 21

(iv)    related to reversal of voluntary sterilization procedures or other infertility services;

(v)     for personal or comfort items; or

(vi)    for any other reason that may exclude the procedure or course of treatment from reimbursement.

The Administrative Committee, its designee or Insurer need not base its determination solely upon the advice of the Physician, but shall consider said advice as relevant information in rendering its final decision on an appeal.

9.3    Forfeiture and Application Of Benefit Plan Surplus

Any balance remaining in a Participant's Dependent Care Spending Account or the Participant's Health Care Spending Account as of the end of each Plan Year shall be forfeited at the end of the first quarter of the next following Plan Year unless the Participant had made a claim for such Plan Year, in writing, which has been denied or is pending, in which event the amount of the claim shall be held in his account until the claim appeal procedures set forth in Section 9.2 have been satisfied or the claim is paid. If any such claim is denied on appeal, the amount held beyond the end of the Plan Year shall be forfeited. Any forfeited amounts may, but need not be, separately accounted for after forfeiture. In no event shall such amounts be carried over to reimburse a Participant for Eligible Expenses incurred during a subsequent Plan Year, nor shall amounts forfeited by a particular Participant be made available to such Participant in any other form or manner, except as permitted by Treasury regulations. Forfeited amounts shall be used to defray any administrative costs and experience losses under the Plan.

9.4    Named Fiduciary

The Administrator shall be the named fiduciary pursuant to ERISA Section 402 and shall be responsible for the management and control of the operation and administration of the Plan.

9.5    Summary Plan Descriptions

In the event that anything in this Article IX shall conflict with any Appendix this Article IX shall govern.



## ARTICLE X - ADMINISTRATION

10.1   Plan Administrator

The Plan shall be administered by an Administrative Committee (hereinafter referred to as the "Administrative Committee" or the "Administrator"). The members of the Administrative Committee initially shall be (1) the Manager - Employee Services, Oilfield Services, (2) the Manager, Benefits, Schlumberger Limited, New York, (3) the Manager, Benefit Plan Compliance, Schlumberger Limited, New York, and (4) the Director of Personnel, Schlumberger Limited, New York, along with any other appointment (by title or position) by the Board of Directors, all of whom shall serve at the pleasure of the Board of Directors. The Board of Directors shall have the right to change the title or positions that serve as members of the Administrative Committee at any time and from time to time. The Administrative Committee shall normally consist of at least four persons; however, during interim periods which occur after the resignation or death of a member and before the appointment of such member's successor, the Administrative Committee may temporarily have fewer than four members. For purposes of ERISA, the Administrative Committee shall be the Plan "administrator" and shall be a "named fiduciary" with respect to the general administration of the Plan.

10.2   Finance Committee

The Finance Committee shall be the committee appointed under the Schlumberger Group Health Plan Trust Agreement.

10.3   Records of Administrative Committee

The Administrative Committee shall make available to Participants for examination, during normal business hours, such records of the Benefit Programs as pertain to the examining person and such documents relating to the Benefit Programs as are required by ERISA.

10.4   Administrative Committee Action

The Administrative Committee shall act by majority decision of its members at the time in office and such action may be taken either by vote at a meeting, whether held in person or by a telephone conference, or in writing without a meeting. The Administrative Committee may adopt such rules, regulations and bylaws as it deems desirable for the conduct of its affairs. The Administrative Committee may authorize any one or more of its members or an agent to execute any document or documents on behalf of the Administrative Committee, in which event the Administrative Committee shall notify any applicable parties in writing of such action and the name

or names of its member or members or other agent so designated. Upon the approval of all of the members of the Administrative Committee, the Administrative Committee may (i) allocate among any of its members any of the responsibilities of the Administrative Committee under the Plan, and/or (ii) designate any person, firm or corporation that is not a member of the Administrative Committee to carry out any of the responsibilities of the Administrative Committee under the Plan. Any such allocation or designation shall be made pursuant to a written instrument executed by all of the members of the Administrative Committee or by a single member of the committee reflecting the approval described above. The Chairman of the Administrative Committee shall be agent of the Plan and the Administrative Committee for the service of legal process at the New York City office of Schlumberger Limited.

10.5    Duties and Action of Finance Committee

The Finance Committee shall have such powers and duties as necessary to fulfill its duties under this Plan.

The Finance Committee shall act by a majority of its members at the time in office and such action may be taken either by a vote at a meeting, whether held in person or by a telephone conference, or in writing without a meeting. The Finance Committee may, by such majority action, authorize any one or more of its members or an agent to execute any document or documents on behalf of the Finance Committee, in which event the Finance Committee shall notify any affected parties in writing of such action and the name or names of its member or members or other agents so designated.

Upon the approval of a majority of the members of the Finance Committee, the Finance Committee may (i) allocate among any of its members any of the responsibilities of the Finance Committee under the Plan, and/or (ii) designate any person, firm or corporation that is not a member of the Finance Committee to carry out any of the responsibilities of the Finance Committee under the Plan. Any such allocation or designation shall be made pursuant to a resolution adopted by a Finance Committee or to a written instrument executed by a majority of the members of the Finance Committee or by a single member of the committee reflecting the approval described above.

10.6    Committee Member Disqualification

A member of a Committee who is a Participant shall not vote on any question relating specifically to himself or herself.



10.7    Compensation, Expenses and Advisers of the Committees

The members of the Administrative Committee and the Finance Committee (hereinafter sometimes referred to individually as the "Committee" or jointly as the "Committees") shall serve without bond (unless otherwise required by law) and without compensation for their services as such. A Committee may select, and authorize the Plan to compensate suitably, such attorneys, agents and representatives as it may deem necessary or advisable to the performance of its duties. All expenses of the Committees that shall arise in connection with the administration of the Plan shall be paid by the Employers.

10.8    Liability of the Committees

Except to the extent that such liability is created by ERISA, no member of a Committee shall be liable for any act or omission of any other member of a Committee, nor for any act or omission on his own part except for his own gross negligence or willful misconduct. The Company shall indemnify and hold harmless each member of the respective Committees from any and all claims, losses, damages, expenses (including counsel fees approved by such Committee), and liabilities arising from any act or omission of such member in connection with duties and responsibilities under the Plan, except when the same is judicially determined to be due to the gross negligence or willful misconduct of such member.

10.9    Committee Determinations

The Administrative Committee, on behalf of the Participants and their Beneficiaries, shall enforce the Plan in accordance with its terms and shall have all powers necessary for the accomplishment of that purpose, including, but not by way of limitation, the following powers:

(a)    to determine all questions relating to the eligibility of Employees to become Participants;

(b)    to authorize all disbursements by the Plan, including payments of Benefits, administrative costs of the Plan and premiums under Insurance Contracts;

(c)    to interpret and construe, in its sole discretion, all terms, provisions, conditions and limitations of the Plan and of any Benefit Program adopted hereunder and to reconcile any inconsistency or supply any omitted detail that may appear in the Plan or in any Benefit Program adopted hereunder in such manner and to such extent, consistent with the general terms of the Plan and of any Benefit Program adopted hereunder, as the Committee shall deem appropriate to effectuate the Plan and any Benefit Program adopted hereunder; and

(d)    to make and enforce such rules and regulations for the administration of the Plan as are not inconsistent with the terms set forth herein.

The Finance Committee shall have all power necessary or appropriate to carry out its duties specified hereunder, including, but not by way of limitation, the power to determine and communicate to the Employers the method and policy of funding.

10.10   Information from Employer

To enable the Administrative Committee to perform its functions, each Employer shall supply full and timely information to the Administrative Committee or its designee who is or may be responsible for providing administrative services, disability Case Management, or insurance under a Benefits Program, of all matters relating to the dates of employment of its Employees for purposes of determining eligibility of Employees to participate hereunder, their retirement, death or other cause for termination of employment, and such other pertinent facts as the Administrative Committee may require. The Administrative Committee shall advise the Finance Committee of such of the foregoing facts as may be pertinent to administration of the Plan.

10.11   General Powers of Administrative Committee

In addition to all other powers herein granted, and in general consistent with the provisions hereof, the Administrative Committee shall have all other rights and powers reasonably necessary to supervise and control the administration of the Plan.   The determination of any fact by the Administrative Committee and the construction placed by the Administrative Committee upon the provisions of the Plan shall be binding upon all of the Participants under the Plan and the Employers.

10.12   Uniform Administration

Whenever in the administration of the Plan any action is required by an Employer, the Finance Committee or the Administrative Committee, including, but not by way of limitation, action with respect to eligibility of Employees, Contributions and Benefits, no action shall be taken which will discriminate in favor of Participants who are officers or shareholders of an Employer or highly compensated Employees.

10.13   Reporting Responsibilities

As Administrator of the Plan under ERISA, the Administrative Committee shall file with the appropriate office of the Internal Revenue Service or the Department of Labor all reports, returns and notices required under ERISA, and any other reports required by the Code.



10.14  Disclosure Responsibilities

The Administrative Committee shall make available to each Participant such records, documents and other data as may be required under ERISA, and Participants shall have the right to examine such records at reasonable times during normal business hours.  Nothing contained in the Plan shall give any Participant the right to examine any data or records reflecting the compensation paid to, or relating to any account of, any other Participant, except as may be required under ERISA.

10.15  Allocation of Responsibility Among Fiduciaries for Plan

The Fiduciaries shall have only those specific powers, duties, responsibilities and obligations as are specifically given them under the Plan. In addition to those powers and responsibilities given to the Fiduciaries elsewhere in this Plan, the following apply.

(a)  Employers shall have the sole responsibility for forwarding the Contributions provided for under Article V as instructed by the Administrative or Finance Committee.

(b)  The Company shall have the sole authority to appoint and remove members of the Administrative Committee.

(c)  The Administrative Committee shall have the sole authority and responsibility for the administration of the Plan, including the authority to direct any Employer to enter into any administrative services contract.

(d)  The Board of Directors of Schlumberger Limited shall have the sole authority to appoint and remove members of the Finance Committee.

(e)  The Finance Committee and the Administrative Committee shall have joint authority and responsibility to appoint and remove any Insurer.

(f)  Each Fiduciary may rely upon any direction, information or action of another Fiduciary as being proper under the Plan, and is not required under the Plan to inquire into the propriety of any such direction, information or action.  It is intended under the Plan and the trust that each Fiduciary shall be responsible for the proper exercise of its own powers, duties, responsibilities, and obligations under the Plan and shall not be responsible for any act or failure to act of another Fiduciary.



10.16 <u>Annual Audit</u>

If required by ERISA, the Administrative Committee shall engage, on behalf of all Participants, an independent Certified Public Accountant who shall conduct an annual examination of any financial statements of the Plan, and of other books and records of the Plan, as the Certified Public Accountant may deem necessary to enable him or her to form and provide a written opinion as required by such law. If, however, the statements required to be submitted as part of the reports to the Department of Labor are prepared by a bank or similar institution or insurance carrier regulated and supervised and subject to periodic examination by a state or federal agency and if such statements are certified by the preparer as accurate and if such statements are, in fact, made a part of the annual report to the Department of Labor and no such audit is required by ERISA then the audit required by the foregoing provisions of this Section shall be optional with the Administrative Committee.

