EXHIBIT E

AFFIDAVIT OF KIRK TRUJILLO

(3:05-cv-246-TMB)

# SCHLUMBERGER LONG TERM DISABILITY PLAN

## Effective January 1, 2000

Exhibit F

Page 1 of 20

# TABLE OF CONTENTS

**ARTICLE I - DEFINITIONS**.................................................................................... 3

   1.1    ACCIDENT, ILLNESS OR INJURY ........................................................ 3
   1.2    ADMINISTRATIVE COMMITTEE ............................................................ 3
   1.3    AFFILIATE ...................................................................................... 3
   1.4    ANNUAL ENROLLMENT ...................................................................... 3
   1.5    APPENDICES ................................................................................... 3
   1.6    BENEFIT PROGRAM .......................................................................... 4
   1.7    BENEFITS........................................................................................ 4
   1.8    BOARD OF DIRECTORS ..................................................................... 4
   1.9    CASE MANAGEMENT ........................................................................ 4
   1.10  CODE ............................................................................................ 4
   1.11  COMMITTEE OR COMMITTEES ........................................................... 4
   1.12  COMPANY ....................................................................................... 4
   1.13  CONTRIBUTION ............................................................................... 4
   1.14  EFFECTIVE DATE ............................................................................ 5
   1.15  EMPLOYEE ..................................................................................... 5
   1.16  EMPLOYER ..................................................................................... 5
   1.17  ERISA ......................................................................................... 5
   1.18  FIDUCIARIES ................................................................................... 5
   1.19  FINANCE COMMITTEE ...................................................................... 5
   1.20  INSURANCE CONTRACT .................................................................... 6
   1.21  INSURER ........................................................................................ 6
   1.22  MEDICAL PLAN ............................................................................... 6
   1.23  PARTICIPANT .................................................................................. 6
   1.25  PLAN ............................................................................................. 6
   1.26  PLAN YEAR .................................................................................... 6
   1.27  PHYSICIAN ..................................................................................... 6
   1.28  RABBI TRUST AGREEMENT ............................................................... 7
   1.29  RABBI TRUST OR RABBI TRUST FUND ............................................... 7
   1.30  SOCIAL SECURITY .......................................................................... 7
   1.31  TRUST AGREEMENT ........................................................................ 7
   1.32  TRUST OR TRUST FUND .................................................................. 7
   1.33  TRUSTEE ....................................................................................... 7

**ARTICLE II - ADMINISTRATION OF THE PLAN**.......................................... 8

   2.1    PLAN ADMINISTRATOR ..................................................................... 8
   2.2    FINANCE COMMITTEE....................................................................... 8
   2.3    RECORDS OF ADMINISTRATIVE COMMITTEE ...................................... 8
   2.4    ADMINISTRATIVE COMMITTEE ACTION .............................................. 8
   2.5    DUTIES AND ACTION OF FINANCE COMMITTEE................................... 9
   2.6    COMMITTEE MEMBER DISQUALIFICATION .......................................... 10
   2.7    COMPENSATION, EXPENSES AND ADVISERS OF THE COMMITTEES ....................... 10

Exhibit _E_
Page _2_ of _20_

2.8   LIABILITY OF THE COMMITTEES ............................................................ 10
2.9   COMMITTEE DETERMINATIONS ............................................................ 10
2.10  INFORMATION FROM EMPLOYER .......................................................... 11
2.11  GENERAL POWERS OF ADMINISTRATIVE COMMITTEE ......................... 11
2.12  UNIFORM ADMINISTRATION ................................................................ 12
2.13  REPORTING RESPONSIBILITIES ........................................................... 12
2.14  DISCLOSURE RESPONSIBILITIES .......................................................... 12
2.15  ALLOCATION OF RESPONSIBILITY AMONG FIDUCIARIES FOR PLAN, TRUST AND RABBI
      TRUST  ADMINISTRATION ................................................................... 12
2.16  ANNUAL AUDIT ................................................................................. 13

**ARTICLE III - ELIGIBILITY AND PARTICIPATION** ...................................... **14**

3.1   GENERAL .......................................................................................... 14
3.2   FAILURE TO ENROLL PROMPTLY .......................................................... 14
3.3   ANNUAL ENROLLMENT ....................................................................... 14
3.4   COVERAGE COMMENCEMENT .............................................................. 14
3.5   BENEFIT COMMENCEMENT .................................................................. 15
3.6   TERMINATION OF COVERAGE .............................................................. 15
3.7   TERMINATION OF BENEFITS ................................................................ 16
3.8   PARTICIPANTS TO FURNISH REQUIRED INFORMATION .......................... 16
3.9   DISCRIMINATION IN FAVOR OF HIGHLY COMPENSATED ......................... 16

**ARTICLE IV – FAMILY MEDICAL LEAVE ACT** ........................................... **17**

**ARTICLE V – CONTRIBUTIONS & FUNDING** ............................................. **18**

5.1   FUNDING ........................................................................................... 18
5.2   EMPLOYER CONTRIBUTIONS ............................................................... 18
5.3   CONTRIBUTIONS BY PARTICIPANTS ...................................................... 18
5.4   FUNDING POLICY ............................................................................... 19

**ARTICLE VI – BENEFITS AND PAYMENTS OF BENEFITS** ........................... **20**

6.1   ELIGIBILITY FOR BENEFITS ................................................................. 20
6.2   PAYMENT OF BENEFITS ...................................................................... 20
6.3   NOTICE OF POTENTIAL DISABILITY ...................................................... 20
6.4   CLAIMS FOR BENEFITS ....................................................................... 21
6.5   CLAIMS REVIEW PROCEDURE .............................................................. 21
6.6   CASE MANAGEMENT ........................................................................... 22
6.7   EXCLUSIONS, LIMITATIONS, AND PRE-EXISTING CONDITIONS ............... 23

**ARTICLE VII – SUBROGATION** ................................................................ **24**

**ARTICLE VIII – COORDINATION WITH OTHER DISABILITY BENEFITS** ......... **26**

8.1   GENERAL ........................................................................................... 26
8.2   BENEFITS NOT IN PAYMENT STATUS .................................................... 26
8.3   ADMINISTRATION ............................................................................... 26

Exhibit   E
Page  3  of  20

**ARTICLE IX - TRUST AGREEMENT AND TRUST FUND**............................................ 28

9.1    TRUST AGREEMENT ............................................................ 28
9.2    RABBI TRUST AGREEMENT ..................................................... 28
9.3    DIRECTIONS TO TRUSTEES ..................................................... 28
9.4    TRUSTEES' RELIANCE ON INSTRUCTIONS........................................ 28
9.5    AUTHORITY OF TRUSTEES IN ABSENCE OF INSTRUCTIONS FROM A COMMITTEE..... 29
9.6    AUTHORITY TO DESIGNATE INVESTMENT MANAGER.................................. 29
9.7    BENEFIT PROGRAM ACCOUNTS .................................................. 29

**ARTICLE X - ADOPTION OF PLAN BY AFFILIATES; SEPARATION OF THE TRUST FUND; AND AMENDMENT AND TERMINATION OF THIS INSTRUMENT 30**

10.1    ADOPTIVE INSTRUMENT.......................................................... 30
10.2    SEPARATION OF THE TRUST FUND OR RABBI TRUST FUND......................... 30
10.3    AMENDMENT OF THE PLAN AND BENEFIT PROGRAMS.............................. 30
10.4    ACCEPTANCE OR REJECTION OF AMENDMENT BY EMPLOYERS ..................... 31
10.5    TERMINATION OF BENEFIT PROGRAM ........................................... 31
10.6    TERMINATION OF THE PLAN .................................................... 32
10.7    LIQUIDATION AND DISTRIBUTION OF TRUST FUND OR RABBI TRUST FUND UPON
         TERMINATION .................................................................. 32

**ARTICLE XI - COMPLIANCE WITH OTHER LAWS AND REGULATIONS** ................ 33

11.1    UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT............. 33

**ARTICLE XII - MISCELLANEOUS PROVISIONS**........................................ 34

12.1    TERMS OF EMPLOYMENT....................................................... 34
12.2    CONTROLLING LAW............................................................ 34
12.3    INVALIDITY OF PARTICULAR PROVISIONS ....................................... 34
12.4    NON-ALIENATION OF BENEFITS ................................................ 34
12.5    NO DUPLICATION OF BENEFITS ................................................ 34
12.6    PAYMENTS IN SATISFACTION OF CLAIMS OF PARTICIPANTS ...................... 35
12.7    PAYMENTS DUE INCOMPETENTS ................................................ 35
12.8    ACCEPTANCE OF TERMS AND CONDITIONS OF PLAN AND BENEFIT PROGRAM BY
         PARTICIPANTS ................................................................. 35
12.9    IMPOSSIBILITY OF DIVERSION OF TRUST FUND OR RABBI TRUST FUND.............. 35
12.10   EVIDENCES OF ACTIONS BY THE COMPANY OR EMPLOYERS ...................... 36
12.11   EXPENSES .................................................................... 36

**APPENDIX A    Oilfield Services summary plan description**

**APPENDIX B    Test & Transactions summary plan description**

**APPENDIX C    Resource Management Services summary plan description**

**APPENDIX D    ERISA section of summary plan descriptions**

Exhibit E
Page 4 of 20

## Schlumberger Long Term Disability Plan

WHEREAS, Schlumberger Technology Corporation, a Texas corporation (the "Company") and certain Affiliates (as hereinafter defined) provided disability income benefits to certain Employees through the Schlumberger Group Health Care Plan prior to January 1, 2000; and

WHEREAS, these benefits were paid through a combination of Company and Affiliate funds and through funds of the Schlumberger Master Group Health Care Trust prior to January 1, 2000; and

WHEREAS, the Company has significantly revised the benefits provided to Employees and the amount of Employee contributions required to obtain these benefits; and

WHEREAS, the Company wishes to maintain the Schlumberger Long Term Disability Plan (the "Plan") as a separate plan that deals solely with disability benefits; and

WHEREAS, the Company wishes to make the summary plan descriptions in the Appendices an integral part of the Plan;

NOW, THEREFORE, effective January 1, 2000, the Company hereby establishes and adopts the following Schlumberger Long Term Disability Plan for the benefit of certain of its Employees and the Employees of participating Affiliates.

Exhibit  E
Page  5  of  20

## Purpose

The purpose of the Plan and any related Trust Agreement, Rabbi Trust Agreement, and Insurance Contract or administrative services agreement is to provide, through insurance or otherwise, for the payment of employee welfare disability income benefits for the eligible Employees of the Company and its Affiliates, as defined herein.

The Company intends that the Plan qualify as an accident and health plan under Section 105(e) of the Code and that any non-taxable benefits provided under the Plan as a result of Participant contributions be eligible for exemption from Participants' income under Section 105(a) of the Code.

The Company also intends that that the coverage provided by Employer contributions not be includable in Participants' gross income per Section 106(a) of the Code.

The Company also intends that the Plan comply with the nondiscrimination provisions of Section 505(b) of the Code in regards to amounts held in a 501(c)(9) Trust.

The Company also intends that Plan Benefits be deemed to satisfy the requirements imposed by any state temporary disability statues regarding non-occupational illness, accident or injury to the extent such statues are not preempted by ERISA.

Exhibit    E
Page  6  of  20

## ARTICLE I - Definitions

Unless otherwise listed in this Section, terms used in the Appendices shall have the meaning defined therein.  In case of a discrepancy between the definition of a term used in the Appendices and the Plan, the Plan definition shall control.  If a term is not defined in either the Appendices or the Plan, its usual and common meaning shall be applied.

Words used in the Plan and in any Trust Agreement in the singular shall include the plural and in the plural the singular, and the gender of words used shall be construed to include whichever may be appropriate under any particular circumstances of the masculine, feminine or neuter genders.

1.1    Accident, Illness or Injury

    means an event causing a bodily injury.  Accident or Injury means an event which results from a sudden, violent, and unexpected event.  The term "accident" does not include poisoning, disease or infection, with the exception of an infection resulting from an unintentionally inflicted cut or wound.  Illness (removed "also") means a physical or mental disease, including infection, pregnancy or complication of pregnancy.

1.2    Administrative Committee

    means the Administrative Committee appointed by the Company under Section 2.1 of the Plan to act as administrator of the Plan and to perform the duties described in Article II hereof.

1.3    Affiliate

    means the Employer and any corporation which is a member of a controlled group of corporations (as defined in Code Section 414(b)) which includes the Employer; and any trade or business (whether or not incorporated) which is under common control (as defined in Code Section 414(c)) with the Employer and any other entity required to be aggregated with the Employer pursuant to Treasury regulations under Code.

1.4    Annual Enrollment

    means the period of time set out in Section 3.3 during which Employees may enroll in Benefit Programs for the next Plan Year.

1.5    Appendices

    means the summary plan descriptions of Benefit Programs adopted under the Plan which shall be attached to the Plan as appendices from time to time.

Exhibit  E
Page 7 of 20

1.6    <u>Benefit Program</u>

means any program providing long term disability income adopted by an Employer and acknowledged by the Administrative Committee as a Benefit Program under the Plan.   The summary plan descriptions of such Benefit Programs shall be included as Appendices to the Plan, and shall be an integral part of this document.   References herein to the terms of a Benefit Program shall mean references to the applicable Appendix.

1.7    <u>Benefits</u>

means long term disability benefits set forth in the attached Appendices.

1.8    <u>Board of Directors</u>

means the Board of Directors of the Company.

1.9    <u>Case Management</u>

means, but is not limited to, evaluation of the disability, determination of the length of disability benefits, and review of treatments for the illness or injury that caused the disability, including contact with the disabled Participant's physician.

1.10   <u>Code</u>

means the Internal Revenue Code of 1986, as may be amended from time to time.

1.11   <u>Committee or Committees</u>

means the Administrative Committee or the Finance Committee, as applicable. When used in the in the plural, Committees means the Administrative Committee and the Finance Committee, jointly.

1.12   <u>Company</u>

means Schlumberger Technology Corporation, a Texas corporation, its predecessors and successors.

1.13   <u>Contribution</u>

means any amount contributed to any Trust Fund or Rabbi Trust Fund pursuant to the provisions of the Plan, whether incidental to the original adoption of the Plan and the establishment of the Trust Fund or Rabbi Trust Fund, or at any time subsequent thereto, by an Employer or by a Participant.



Exhibit  E
Page  8  of  20

1.14    Effective Date

means January 1, 2000, the date as of which the provisions of the Plan first became effective, or for any Employer, any subsequent date as of which the provisions of the Plan first became effective with respect to that Employer.

1.15    Employee

means any person who is employed by an Employer and carried on the Employer's U.S. payroll. The term Employee shall not include any person paid through invoices submitted by the person, and excludes any person who is employed in a class designated by the Employer as "independent contractor" regardless of whether the Internal Revenue Service deems such person a "common law employee" subject to withholding. The term Employee shall not include leased employees within the meaning of Code Section 414(n)(2).

1.16    Employer

means Schlumberger Technology Corporation, a Texas corporation, its predecessors and successors, and any Affiliate which shall adopt the Plan pursuant to the provisions of Article X hereof, and the successors, if any, to such Affiliate, for so long as the successors remain Affiliates.

1.17    ERISA

means Public Law No. 93-406, the Employee Retirement Income Security Act of 1974, as amended from time to time.

1.18    Fiduciaries

means the Employer, the Administrative Committee, the Finance Committee, any Insurer and the Trustee, but only with respect to the specific responsibilities of each for Plan and Trust administration, all as described in Article II. Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan.

1.19    Finance Committee

means the Finance Committee appointed by Schlumberger Limited to act as a named Fiduciary under the Plan and Trust Agreement to perform the duties specified in Article II of the Plan and the Trust Agreement.

Exhibit E
Page 9 of 20

1.20    Insurance Contract

means any insurance contract entered into pursuant to Section 2.15(f) and held by the Trust, in order to fund all or a part of the Benefits provided under one or more Benefit Programs.

1.21    Insurer

means any insurance company issuing an Insurance Contract or rendering administrative services in the processing of claims under any Benefit Program.

1.22    Medical Plan

means any of the Benefit Programs under the Schlumberger Group Health Care Plan.

1.23    Participant

means an Employee who has fulfilled and continues to fulfill the eligibility requirements for Benefits described in any of the Benefit Programs under the Plan, and, where Employee Contributions are required, who has elected to join that Benefit Program in accordance with the requirements set out in the applicable Appendices.

1.24    Plan

means the Schlumberger Long Term Disability Plan set forth herein, including the Appendices, as it may be amended from time to time.

1.25    Plan Year

means the calendar year.

1.26    Physician

means a licensed medical practitioner who is practicing within the scope of his license and who is licensed to prescribe and administer drugs or to perform surgery. It will also include any other licensed medical practitioner whose services are required to be covered by law in the locality where the policy is issued if such practitioner is:

    a.  operating within the scope of his license; and
    b.  performing a service for which Benefits are provided under the Plan when performed by a Physician.



Exhibit E
Page 10 of 20

1.27    <u>Rabbi Trust Agreement</u>

means any agreement which may be utilized by the Employer as provided for in Section 9.2 hereof, as may be amended from time to time.

1.28    <u>Rabbi Trust or Rabbi Trust Fund</u>

means all Contributions held by the Trustee under the Rabbi Trust Agreement, together with all earnings and increments thereon.

1.29    <u>Social Security</u>

means the program of income benefits provided under Title II of the Social Security Act of 1965 as amended.

1.30    <u>Trust Agreement</u>

means the Trust Agreement as provided for in Section 9.1 hereof, as may be amended from time to time.

1.31    <u>Trust or Trust Fund</u>

means all Contributions of Employers and Participants held by the Trustee under the Trust Agreement, together with all earnings and increments thereon.

1.32    <u>Trustee</u>

means the trustee appointed under the Trust Agreement and/or the Rabbi Trust Agreement, as applicable.



## ARTICLE II - ADMINISTRATION OF THE PLAN

2.1    Plan Administrator

The Plan shall be administered by an Administrative Committee (hereinafter referred to as the "Administrative Committee" or the "Administrator").    The members of the Administrative Committee initially shall be (1) the Manager - Employee Services, Oilfield Services, (2) the Manager, Benefits, Schlumberger Limited, New York, (3) the Manager, Benefit Plan Compliance, Schlumberger Limited, New York, and (4) the Director of Personnel, Schlumberger Limited, New York, along with any other appointment (by title or position) by the Board of Directors, all of whom shall serve at the pleasure of the Board of Directors. The Board of Directors shall have the right to change the title or positions that serve as members of the Administrative Committee at any time and from time to time. The Administrative Committee shall normally consist of at least four persons; however, during interim periods which occur after the resignation or death of a member and before the appointment of such member's successor, the Administrative Committee may temporarily have fewer than four members. For purposes of ERISA, the Administrative Committee shall be the Plan "administrator" and shall be the "named fiduciary" with respect to the general administration of the Plan (except as to the investment of the assets of any Trust Fund or Rabbi Trust Fund).

2.2    Finance Committee

The Finance Committee shall be the committee appointed under the Trust Agreement.

2.3    Records of Administrative Committee

The Administrative Committee shall make available to Participants for examination, during normal business hours, such records of the Benefit Programs as pertain to the examining person and such documents relating to the Benefit Programs as are required by ERISA.

2.4    Administrative Committee Action

The Administrative Committee shall act by majority decision of its members at the time in office and such action may be taken either by vote at a meeting, whether held in person or by a telephone conference, or in writing without a meeting. The Administrative Committee may adopt such rules, regulations and bylaws as it deems desirable for the conduct of its affairs. The Administrative Committee may authorize any one or more of its members or an agent to execute any document or documents on behalf of the Administrative Committee, in which event the Administrative Committee shall notify the Trustees in writing of such action and the name or names of its member or members or other agent so

Exhibit E
Page 12 of 20

designated if such authorization affects the Trustees. The Trustees thereafter shall accept and rely upon any document executed by such member or members or agent as representing the action of the Administrative Committee, until the Administrative Committee shall file with the Trustees a written revocation of such designation. Upon the approval of all of the members of the Administrative Committee, the Administrative Committee may (i) allocate among any of its members any of the responsibilities of the Administrative Committee under the Plan, Trust Agreement and Rabbi Trust Agreement and/or (ii) designate any person, firm or corporation that is not a member of the Administrative Committee to carry out any of the responsibilities of the Administrative Committee under the Plan, Trust Agreement, and/or Rabbi Trust Agreement. Any such allocation or designation shall be made pursuant to a written instrument executed by all of the members of the Administrative Committee or by a single member of the committee reflecting the approval described above. The Chairman of the Administrative Committee shall be agent of the Plan and the Administrative Committee for the service of legal process at the New York City office of Schlumberger Limited.

2.5    <u>Duties and Action of Finance Committee</u>

The Finance Committee shall direct the Trustees with respect to the general investment policy to be followed in investing any Trust Fund or Rabbi Trust Fund, and shall have such other powers and duties as set forth in the Trust Agreement and Rabbi Trust Agreement. The Trustees shall invest and reinvest the Trust Fund and Rabbi Trust Fund or shall cause the Trust Fund and Rabbi Trust Fund to be invested and reinvested in accordance with the provisions of the Trust Agreement and Rabbi Trust Agreement.

The Finance Committee shall act by a majority of its members at the time in office and such action may be taken either by a vote at a meeting, whether held in person or by a telephone conference, or in writing without a meeting. The Finance Committee may, by such majority action, authorize any one or more of its members or an agent to execute any document or documents on behalf of the Finance Committee, in which event the Finance Committee shall notify the Trustees in writing of such action and the name or names of its member or members or other agents so designated if such authorization affects the Trustees. The Trustees thereafter shall accept and rely upon any document executed by such member or members or agent as representing the action of the Finance Committee, until the Finance Committee shall file with the Trustees a written revocation of such designation.

Upon the approval of a majority of the members of the Finance Committee, the Finance Committee may (i) allocate among any of its members any of the responsibilities of the Finance Committee under the Plan, Trust Agreement and Rabbi Trust Agreement and/or (ii) designate any person, firm or corporation that is not a member of the Finance Committee to carry out any of the responsibilities

Exhibit E
Page 13 of 20

of the Finance Committee under the Plan, Trust Agreement and/or Rabbi Trust Agreement. Any such allocation or designation shall be made pursuant to a resolution adopted by a Finance Committee or to a written instrument executed by a majority of the members of the Finance Committee or by a single member of the committee reflecting the approval described above.

## 2.6    Committee Member Disqualification

A member of a Committee who is a Participant shall not vote on any question relating specifically to such member.

## 2.7    Compensation, Expenses and Advisers of the Committees

The members of the Administrative Committee and the Finance Committee (hereinafter sometimes referred to individually as the "Committee" or jointly as the "Committees") shall serve without bond (unless otherwise required by law) and without compensation for their services as such. A Committee may select, and authorize the Trustees to compensate suitably, such attorneys, agents and representatives as it may deem necessary or advisable to the performance of its duties. All expenses of the Committees that shall arise in connection with the administration of the Plan shall be paid by the Employers or by the Trustees out of the Trust Fund and/or Rabbi Trust Fund.

## 2.8    Liability of the Committees

Except to the extent that such liability is created by ERISA, no member of a Committee shall be liable for any act or omission of any other member of a Committee, nor for any act or omission on his own part except for his own gross negligence or willful misconduct. The Company shall indemnify and hold harmless each member of the respective Committees from any and all claims, losses, damages, expenses (including counsel fees approved by such Committee), and liabilities arising from any act or omission of such member in connection with duties and responsibilities under the Plan, Trust Agreement and Rabbi Trust Agreement, except when the same is judicially determined to be due to the gross negligence or willful misconduct of such member.

## 2.9    Committee Determinations

The Administrative Committee, on behalf of the Participants and their Beneficiaries, shall enforce the Plan in accordance with its terms and shall have all powers necessary for the accomplishment of that purpose, including, but not by way of limitation, the following powers:

(a)    To determine all questions relating to the eligibility of Employees to become Participants;

Exhibit E
Page 14 of 20

(b)    To authorize all disbursements by the Trustees from the Trust Fund and/or Rabbi Trust Fund, including payments of Benefits, administrative costs of the Plan and premiums under Insurance Contracts;

(c)    To interpret and construe, in its sole discretion, all terms, provisions, conditions and limitations of the Plan and of any Benefit Program adopted hereunder and to reconcile any inconsistency or supply any omitted detail that may appear in the Plan or in any Benefit Program adopted hereunder in such manner and to such extent, consistent with the general terms of the Plan and of any Benefit Program adopted hereunder, as the Committee shall deem appropriate to effectuate the Plan and any Benefit Program adopted hereunder; and

(d)    To make and enforce such rules and regulations for the administration of the Plan as are not inconsistent with the terms set forth herein.

The Finance Committee shall have all power necessary or appropriate to carry out its duties specified hereunder, including, but not by way of limitation, the power to determine and communicate to the Trustee the method and policy of funding.

## 2.10    Information from Employer

To enable the Administrative Committee to perform its functions, each Employer shall supply full and timely information to the Administrative Committee or its designee who is or may be responsible for providing administrative services, disability Case Management, or insurance under a Benefits Program, of all matters relating to the dates of employment of its Employees for purposes of determining eligibility of Employees to participate hereunder, their retirement, death or other cause for termination of employment, and such other pertinent facts as the Administrative Committee may require. The Administrative Committee shall advise the Finance Committee and Trustees of such of the foregoing facts as may be pertinent to administration of the Trust Fund or Rabbi Trust Fund.

## 2.11    General Powers of Administrative Committee

In addition to all other powers herein granted, and in general consistent with the provisions hereof, the Administrative Committee shall have all other rights and powers reasonably necessary to supervise and control the administration of the Plan. The determination of any fact by the Administrative Committee and the construction placed by the Administrative Committee upon the provisions of the Plan shall be binding upon all of the Participants under the Plan and the Employers.

Exhibit E
Page 15 of 20

## 2.12   Uniform Administration

Whenever in the administration of the Plan any action is required by an Employer, the Finance Committee or the Administrative Committee, including, but not by way of limitation, action with respect to eligibility of Employees, Contributions and Benefits, no action shall be taken which will discriminate in favor of Participants who are officers or shareholders of an Employer or highly compensated Employees.

## 2.13   Reporting Responsibilities

As Administrator of the Plan under ERISA, the Administrative Committee shall file with the appropriate office of the Internal Revenue Service or the Department of Labor all reports, returns and notices required under ERISA, and any other reports required by the Code.   In addition, the Committee shall file required information as specified under any state temporary disability statute.

## 2.14   Disclosure Responsibilities

The Administrative Committee shall make available to each Participant such records, documents and other data as may be required under ERISA, and Participants shall have the right to examine such records at reasonable times during normal business hours.   Nothing contained in the Plan shall give any Participant the right to examine any data or records reflecting the compensation paid to, or relating to any account of, any other Participant, except as may be required under ERISA.

## 2.15   Allocation of Responsibility Among Fiduciaries for Plan, Trust and Rabbi Trust Administration

The Fiduciaries shall have only those specific powers, duties, responsibilities and obligations as are specifically given them under the Plan, Trust or the Rabbi Trust.   In addition to those powers and responsibilities given to the Fiduciaries elsewhere in this Plan, the Trust or the Rabbi Trust, the following apply.

(a)    Employers shall have the sole responsibility for forwarding the Contributions provided for under Article V to the appropriate Trustee.

(b)    The Company shall have the sole authority to appoint and remove the Trustees and members of the Administrative Committee.

(c)    Each Trustee shall have the sole responsibility for the administration of the Trust or Rabbi Trust, as applicable, and the management and control of the assets held under the Trust or Rabbi Trust, as applicable, except to the extent such authority to manage the assets of the Trust Fund or Rabbi Trust Fund is delegated to an Investment Manager, all as specifically provided in the Trust or Rabbi Trust.



Exhibit E
Page 16 of 20

## ARTICLE VI – BENEFITS AND PAYMENTS OF BENEFITS

6.1    Eligibility for Benefits

A Participant shall be eligible for Benefits for Accident, Illness or Injury only in accordance with the terms of the Benefit Program under which he is a Participant.  A Participant shall be required to file such form or forms as the Administrative Committee or its delegate may prescribe for the relevant Benefit Program.

6.2    Payment of Benefits

The Administrative Committee shall authorize and direct the Trustee(s) or Insurer to pay Benefits to such persons in such amounts and at such times as it determines to be required by the terms of each Benefit Program.

6.3    Notice of Potential Disability

Any Participant who is, or expects to be, absent from work for more than 5 consecutive days due to a condition he expects to qualify as a disability entitling him to Benefits must:

(a)    immediately notify the supervisor or manager of said disability, and the date return to work is expected; and

(b)    call the Insurer within 7 business days of the onset of the disability (the day first absent from work).  The Insurer will verify the Participant's home address and telephone number, and obtain the Participant's supervisor's name and telephone number.  The Participant will need to provide certain information about the disability, including the date the underlying Accident, Illness or Injury occurred, the first full day absent (or expected to be absent) from work, a description of the accident, illness or injury, and the attending physician's name, address and telephone number.  The Participant will also be asked to provide a description of job duties and the date return to work is expected.  If the Participant is unable to call, a family member or attending physician may call the Insurer.

If the Participant fails to contact the Insurer for absences that extend beyond five consecutive workdays, Benefits will not commence until a period of time equal to the maximum short-term disability period specified in the applicable Appendix from the date of disability, minus five (5) days, has passed, calculated from the date the Participant or the Participant's designee contacts the Insurer.

6.4    Claims for Benefits

Within a reasonable period following the receipt of any application for Benefits, the Administrative Committee, its designee or Insurer shall determine whether or not the Participant involved is entitled to a Benefit hereunder and, if so, the amount thereof, and shall notify the claimant of its findings.

If a claim is wholly or partially denied, the Administrative Committee or such Insurer or delegate shall so notify the claimant within ninety (90) days after receipt of the claim by the Administrative Committee or Insurer, or delegate, unless special circumstances require an extension of time for processing the claim. If such an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the end of the initial 90-day period. In no event shall such extension exceed a period of ninety (90) days from the end of such initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Administrative Committee or the Insurer or delegate expects to render its final decision. Notice of the decision to deny a claim in whole or in part shall be set forth in a manner calculated to be understood by the claimant and shall contain the following:

(a)    the specific reason or reasons for the denial;

(b)    specific reference to the pertinent Plan or Benefit Program provisions on which the denial is based;

(c)    a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(d)    an explanation of the claims review procedures set forth in Section 6.4 hereof.

If notice of denial is not furnished, and if the claim is not granted within the period of time set forth above, the claim shall be deemed denied for purposes of proceeding to the review stage described in Section 6.5.

6.5    Claims Review Procedure

(a)    Generally

If an application filed by a Participant under Section 6.3 above shall result in a denial of the benefit applied for, either in whole or in part, such applicant shall have the right, to be exercised by written application filed with the Administrative Committee, or an Insurer engaged to provide administrative claims services, within sixty (60) days after receipt of notice of the denial of his application or, if no such notice has been given, within

Exhibit E
Page 18 of 20

sixty (60) days after the application is deemed denied under Section 6.4, to request the review of his application and of his entitlement to the benefit applied for.  Such request for review may contain such additional information and comments as the applicant may wish to present.  The Administrative Committee or Insurer shall reconsider the application for the Benefit in light of such additional information and comments as the applicant may have presented, and shall also permit the applicant or his designated representative to review pertinent documents in its possession, including copies of the Plan and Benefit Program documents and information provided by the Company or other Employer relating to the applicant's entitlement to such Benefit.  The Administrative Committee or Insurer shall make a final determination with respect to the applicant's application for review as soon as practicable, and in any event not later than sixty (60) days after the receipt of the aforesaid request for review, except that under special circumstances, such 60-day period may be extended to the extent necessary, but in no event beyond the expiration of one hundred and twenty (120) days after receipt by the Administrative Committee or Insurer of such request for review.  If such an extension of time for review is required because of special circumstances, written notice of the extension shall be furnished to applicant prior to the commencement of the extension.  Notice of such final determination shall be furnished to the applicant in writing, in a manner calculated to be understood by him, and shall set forth the specific reasons for the decisions and specific references to the pertinent provisions of the Plan and/or Benefit Program upon which the decision is based.  If the decision on review is not furnished within the time period set forth above, the claim shall be deemed denied on review.

(b)    Physician's Advice

(i)    The Administrative Committee, its designee or Insurer shall have the right to appoint a non-involved Physician to advise it on appeals with respect to whether a Participant is disabled according to the applicable Benefit Program's definition of disability, whether the Participant is able to return to work, or otherwise.

(ii)   The Administrative Committee, its designee or Insurer need not base its determination solely upon the advice of the Physician, but shall consider said advice as relevant information in rendering its final decision on an appeal.

6.6    Case Management

Participants will be subject to Case Management in order to be eligible for Benefits. The disability evaluation process will be ongoing while the Participant remains disabled.  Case Management shall consist of independent Physician examinations of the Participant, and the Insurer's or an independent third party's

EXHIBIT E
Page 19 of 20

evaluation of whether the Participant's condition continues to meet the applicable criteria for disability Benefits under the applicable Benefit Program. Benefits shall cease to be effective as of the time Case Management reveals the Participant no longer meets the criteria for Benefits.

6.7    <u>Exclusions, Limitations, and Pre-Existing Conditions</u>

Certain disabilities are specifically excluded from qualifying for Benefits or are subject to additional requirements or Benefit limitations as set forth in the applicable Appendix.

