EXHIBIT F

AFFIDAVIT OF KIRK TRUJILLO

(3:05-cv-246-TMB)

# SCHLUMBERGER GROUP HEALTH CARE PLAN

# As Amended and Restated Effective January 1, 2000

Exhibit F
Page 1 of 22

# TABLE OF CONTENTS

**PURPOSE** ..................................................................................................................... 2

**ARTICLE I - DEFINITIONS**........................................................................................... 3

| | | |
|---|---|---|
| 1.1 | Administrative Committee | 3 |
| 1.2 | Affiliate | 3 |
| 1.3 | Annual Enrollment | 3 |
| 1.4 | Appendices | 3 |
| 1.5 | Beneficiary | 3 |
| 1.6 | Benefit Program | 4 |
| 1.7 | Benefits | 4 |
| 1.8 | Code | 4 |
| 1.9 | Company | 4 |
| 1.10 | Contribution | 4 |
| 1.11 | Covered Services | 4 |
| 1.12 | Dental Benefits | 4 |
| 1.13 | Dependent | 5 |
| 1.14 | Effective Date | 5 |
| 1.15 | Employee | 5 |
| 1.16 | Employer | 5 |
| 1.17 | ERISA | 5 |
| 1.18 | FMLA | 5 |
| 1.19 | Fiduciaries | 5 |
| 1.20 | Finance Committee | 6 |
| 1.21 | HIPAA | 6 |
| 1.22 | Insurance Contract | 6 |
| 1.23 | Insurer | 6 |
| 1.24 | Local Managed Dental Care Option | 6 |
| 1.25 | Local Managed Medical Care Option | 6 |
| 1.26 | Medicare | 6 |
| 1.27 | Medical Benefits | 6 |
| 1.28 | Participant | 7 |
| 1.29 | Plan | 7 |
| 1.30 | Plan Year | 7 |
| 1.31 | Physician | 7 |
| 1.32 | Pre-Certification | 7 |
| 1.33 | Prescription Drug Benefits | 7 |
| 1.34 | Trust Agreement | 7 |
| 1.35 | Trust Fund | 8 |
| 1.36 | Trustee | 8 |
| 1.37 | Vision Benefits | 8 |

**ARTICLE II - ADMINISTRATION OF THE PLAN**............................................................ 9

| | | |
|---|---|---|
| 2.1 | Plan Administrator | 9 |

Exhibit F
Page 2 of 22

2.2   Finance Committee.................................................................
2.3   Records of Administrative Committee ..................................... 9
2.4   Administrative Committee Action ........................................... 9
2.5   Duties and Action of Finance Committee................................ 9
2.6   Committee Member Disqualification...................................... 10
2.7   Compensation, Expenses and Advisers of the Committees........ 11
2.8   Liability of the Committees.................................................... 11
2.9   Committee Determinations.................................................... 11
2.10  Information from Employer.................................................... 11
2.11  General Powers of Administrative Committee......................... 12
2.12  Uniform Administration......................................................... 12
2.13  Reporting Responsibilities..................................................... 12
2.14  Disclosure Responsibilities.................................................... 13
2.15  Allocation of Responsibility Among Fiduciaries for Plan and Trust
        Administration .................................................................... 13
2.16  Annual Audit........................................................................ 14

**ARTICLE III - ELIGIBILITY AND PARTICIPATION** ......................... 15

3.1   General ............................................................................... 15
3.2   Failure to Enroll Promptly..................................................... 15
3.3   Annual Enrollment................................................................ 15
3.4   Benefit Commencement......................................................... 16
3.5   Termination.......................................................................... 16
3.6   Participants to Furnish Required Information ......................... 17
3.7   Discrimination in Favor of Highly Compensated ................... 17
3.8   Other Discrimination............................................................. 17

**ARTICLE IV – FAMILY MEDICAL LEAVE ACT** ............................... 18

**ARTICLE V – HEALTH INSURANCE PORTABILITY
            AND ACCOUNTABILITY ACT OF 1996 ("HIPAA")**......... 19
5.1   Notification .......................................................................... 19
5.2   Disclosure............................................................................ 19
5.3   Special Enrollment Periods .................................................. 19
5.4   General ............................................................................... 20

**ARTICLE VI – QUALIFIED MEDICAL CHILD SUPPORT ORDERS** ......... 21

**ARTICLE VII – EFFECT OF MEDICARE** ......................................... 22
7.1   Active Participants Age 65 and Over ..................................... 22
7.2   Disabled Participants on Account of End-Stage Renal Disease .... 22
7.3   Disabled Participants Eligible for Medicare ........................... 22
7.4   Other Participants (Retirees) Eligible for Medicare ................ 22

Exhibit  F
Page  3  of 22

**ARTICLE VIII – CONTRIBUTIONS & FUNDING**................................................ 23
   8.1     Funding ................................................................................................ 23

**ARTICLE IX – BENEFITS AND PAYMENTS OF BENEFITS** ................................. 24
   9.1     Eligibility for Benefits ......................................................................... 24
   9.2     Payment of Benefits .......................................................................... 24
   9.3     Presenting Claims for Benefits .......................................................... 24
   9.4     Claims Review Procedure .................................................................. 25
   9.5     Disputed Payee for Benefits .............................................................. 26
   9.6     Utilization Review .............................................................................. 26

**ARTICLE X – SUBROGATION** ............................................................................ 27

**ARTICLE XI – COORDINATION WITH OTHER MEDICAL AND DENTAL BENEFITS** ................................................................................................. 29
   11.1    General ............................................................................................. 29
   11.2    Program ............................................................................................ 29
   11.3    Administration ................................................................................... 29

**ARTICLE XII - TRUST AGREEMENT AND TRUST FUND** ..................................... 30
   12.1    Trust Agreement .............................................................................. 30
   12.2    Directions to Trustee ........................................................................ 30
   12.3    Trustee's Reliance on Instructions .................................................. 30
   12.4    Authority of Trustee in Absence of Instructions from a Committee .............. 30
   12.5    Authority to Designate Investment Manager .................................... 31
   12.6    Benefit Program Accounts ................................................................ 31

**ARTICLE XIII - ADOPTION OF PLAN BY AFFILIATES; SEPARATION OF THE TRUST FUND; AND AMENDMENT AND TERMINATION OF THIS INSTRUMENT** ................................................................................ 32
   13.1    Adoptive Instrument ......................................................................... 32
   13.2    Separation of the Trust Fund ........................................................... 32
   13.3    Amendment of the Plan and Benefit Programs ............................... 32
   13.4    Acceptance or Rejection of Amendment by Employers ................... 33
   13.5    Termination of Benefit Program ....................................................... 33
   13.6    Termination of the Plan .................................................................... 33
   13.7    Liquidation and Distribution of Trust Fund upon Termination ......... 34

**ARTICLE XIV - COMPLIANCE WITH OTHER LAWS AND REGULATIONS** ............. 35
   14.1    Qualified Change in Status ............................................................... 35
   14.2    COBRA Continuation Coverage ....................................................... 35
   14.3    Newborns' and Mothers' Health Protection Act .............................. 35
   14.4    Uniformed Services Employment and Reemployment Rights Act ........... 35
   14.5    Mental Health Parity Act ................................................................... 35

Exhibit F
Page 4 of 22

14.6    Women's Health and Cancer Rights Act ................................................................ 36

**ARTICLE XV - MISCELLANEOUS PROVISIONS** ............................................... **37**

15.1    Terms of Employment ........................................................................... 37
15.2    Controlling Law ..................................................................................... 37
15.3    Invalidity of Particular Provisions ......................................................... 37
15.4    Non-alienation of Benefits .................................................................... 37
15.5    Payments in Satisfaction of Claims of Participants .............................. 37
15.6    Payments Due Incompetents ................................................................ 37
15.7    Acceptance of Terms and Conditions of Plan and Benefit Program by
         Participants ........................................................................................... 38
15.8    Impossibility of Diversion of Trust Fund ............................................... 38
15.9    Evidences of Actions by the Company or Employers ............................ 38
15.10   Expenses .............................................................................................. 39

APPENDIX A    Medical Summary Plan Description

APPENDIX B    Dental Summary Plan Description

APPENDIX C    ERISA Section Of Summary Plan Descriptions

APPENDIX D    Local Managed Medical Care

APPENDIX E    Local Managed Dental Care

Exhibit  F
Page  5  of  22

## SCHLUMBERGER GROUP HEALTH CARE PLAN

WHEREAS, Schlumberger Technology Corporation, a Texas corporation (the "Company") and certain Affiliates (as hereinafter defined) have executed the Schlumberger Group Health Care Plan, effective January 1, 1981 for the benefit of their eligible Employees; and

WHEREAS, Section 7.4 of the Plan allows the Company to amend the Plan from time to time to any extent that it may deem advisable; and

WHEREAS, the Company has substantially revised the benefits comprising the Schlumberger Group Health Care Plan; and

WHEREAS, the Company now wishes to incorporate those changes and any additional provisions required by law and regulations into the Plan; and

WHEREAS, the Company wishes to make the summary plan descriptions in the Appendices an integral part of the Plan;

NOW, THEREFORE, effective January 1, 2000, the Company hereby revises and restates the Schlumberger Group Health Care Plan in its entirety.

Exhibit F
Page 6 of 22

## PURPOSE

The purpose of the Plan and its related Trust Agreement is to provide, through insurance or otherwise, for the payment of medical and other similar employee welfare benefits within the ambit of Section 501(c)(9) of the Code, including, but not limited to medical, hearing, vision and dental benefits for the eligible Employees of the Company and its Affiliates, as defined herein.

The Company intends that the Plan qualify as an accident and health plan under Section 105(e) of the Code and that the non-taxable benefits provided under the Plan be eligible for exemption from Participants' income under Sections 105(a) and 105(h) of the Code.

Exhibit  F
Page  7  of  22

## ARTICLE I - Definitions

Unless otherwise listed in this Section, terms used in the Appendices shall have the meaning defined therein. In case of a discrepancy between the definition of a term used in the Appendices and the Plan Document, the Plan Document definition shall control. If a term is not defined in either the Appendices or the Plan Document, its usual and common meaning shall be applied.

Notwithstanding the above, as to Local Managed Medical Care Options, the definitions used by the Insurer or service provider in its materials describing the benefits shall be used; and as to Local Managed Dental Care Options, the definitions used by the Insurer or service provider in its materials describing the benefits shall be used.

Words used in the Plan and in the Trust Agreement in the singular shall include the plural and in the plural the singular, and the gender of words used shall be construed to include whichever may be appropriate under any particular circumstances of the masculine, feminine or neuter genders.

1.1    Administrative Committee

means the Health Care Administrative Committee appointed by the Company under Section 2.1 to act as administrator of the Plan and to perform the duties described in Article II hereof.

1.2    Affiliate

means the Employer and any corporation which is a member of a controlled group of corporations (as defined in Code Section 414(b)) which includes the Employer; and any trade or business (whether or not incorporated) which is under common control (as defined in Code Section 414(c)) with the Employer and any other entity required to be aggregated with the Employer pursuant to Treasury regulations under Code.

1.3    Annual Enrollment

means the period of time set forth in Section 3.3 during which Employees may enroll in Benefit Programs for the next Plan Year.

1.4    Appendices

means the summary plan descriptions of Benefit Programs adopted under the Plan which shall be attached to the Plan as appendices from time to time.



Exhibit  F
Page  8  of  22

1.5    Beneficiary

means such natural person or persons, or the trustee of an inter vivos trust for the benefit of natural persons, entitled to receive a deceased Participant's benefits under the Plan.

1.6    Benefit Program

means any program of medical, vision, hearing, dental, or similar welfare benefits adopted by an Employer and certified to and acknowledged by the Administrative Committee under the Plan. The summary plan descriptions of such Benefit Programs shall be included as Appendices to the Plan, and shall be an integral part of this document. References herein to the terms of a Benefit Program shall mean references to the applicable Appendix.

1.7    Benefits

means cash and the various benefits set forth in the attached Appendices. Benefits shall include, but not be limited to, Medical Benefits, Dental Benefits, Prescription Drug Benefits, and Vision Benefits.

1.8    Code

means the Internal Revenue Code of 1986, as may be amended from time to time.

1.9    Company

means Schlumberger Technology Corporation, a Texas corporation, its predecessors and successors.

1.10    Contribution

means any amount contributed to the Trust Fund pursuant to the provisions of the Plan, whether incidental to the original adoption of the Plan and the establishment of the Trust Fund, or at any time subsequent thereto, by an Employer or by a Participant.

1.11    Covered Services

means expenses that are covered under the Plan and that a Participant may receive reimbursement for. Covered Services shall be those set forth in Appendix B. Covered Services shall also mean those Covered Expenses, Services and Supplies set forth in Appendix A.

Exhibit F
Page 9 of 22

1.12   Dental Benefits

means coverage or reimbursements available for Covered Services that are listed in Appendix B.

1.13   Dependent

means a person eligible for coverage under the Plan by virtue of his or her present or past relationship to an Employee.  Criteria for being considered a Dependent and thus eligible for any Benefits under the Plan is set forth in the attached Appendices.

1.14   Effective Date

means January 1, 1981, the date as of which the provisions of the Plan first became effective, or for any Employer, any subsequent date as of which the provisions of the Plan first became effective.

1.15   Employee

means any person who is employed by an Employer and carried on the Employer's U.S. payroll.  The term Employee shall not include any person paid through invoices submitted by the person, and excludes any person who is employed in a class designated by the Employer as "independent contractor" regardless of whether the Internal Revenue Service deems such person "common law employee" subject to withholding.  The term Employee shall not include leased employees within the meaning of Code Section 414(n)(2).

1.16   Employer

means Schlumberger Technology Corporation, a Texas corporation, its predecessors and successors, and any Affiliate which shall adopt the Plan pursuant to the provisions of Article XIV hereof, and the successors, if any, to such Affiliate, for so long as the successors remain Affiliates.

└── Error. s/b XIII     pb 1-23-03

1.17   ERISA

means Public Law No. 93-406, the Employee Retirement Income Security Act of 1974, as amended from time to time.

1.18   FMLA

means the Family and Medical Leave Act of 1993.



Exhibit F
Page 10 of 22

1.19  Fiduciaries

means the Employer, the Administrative Committee, the Finance Committee, the Insurer and the Trustee, but only with respect to the specific responsibilities of each for Plan and Trust administration, all as described in Article II. Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan.

1.20  Finance Committee

means the Finance Committee appointed by Schlumberger Limited to act as a named Fiduciary under the Plan and Trust Agreement to perform the duties specified in Article II of the Plan and the Trust Agreement.

1.21  HIPAA

means the Health Insurance Portability and Accountability Act, signed into law on August 21, 1996.

1.22  Insurance Contract

means any insurance contract entered into pursuant to Section 2.15 and held by the Company or, with the consent of the Company, by an Employer, in order to fund all or a part of the Benefits provided under one or more Benefit Programs.

1.23  Insurer

means any insurance company issuing an Insurance Contract or rendering administrative services in the processing of claims under any Benefit Program.

1.24  Local Managed Dental Care Option

means any program of dental benefits, entered into by an Employer with the consent of the Administrative Committee, for said Employer's eligible Employees.

1.25  Local Managed Medical Care Option

means any program of medical benefits of the type commonly known as a Health Maintenance Organization, entered into by an Employer with the consent of the Administrative Committee, for said Employer's eligible Employees.

1.26  Medicare

means the program of medical care benefits provided under Title XVIII of the Social Security Act of 1965 as amended.

Exhibit F
Page 11 of 22

1.27    Medical Benefits

means reimbursements for Covered Expenses, Services and Supplies, including vision and prescription drugs, that are listed in Appendix A.

1.28    Participant

means an Employee or Dependent who has fulfilled and continues to fulfill the eligibility requirements for Benefits described in any of the Benefit Programs under the Plan and who has elected to join that Benefit Program in accordance with the requirements set forth in the applicable Appendices.

1.29    Plan

means the Schlumberger Group Health Care Plan set forth herein, including the Appendices, as may be amended from time to time.

1.30    Plan Year

means the calendar year.

1.31    Physician

means a licensed medical practitioner who is practicing within the scope of his license and who is licensed to prescribe and administer drugs or to perform surgery. It will also include any other licensed medical practitioner whose services are required to be covered by law in the locality where the policy is issued if such practitioner is (a) operating within the scope of his license; and (b) performing a service for which Benefits are provided under the Plan when performed by a Physician.

1.32    Pre-Certification

means an administrative procedure whereby a health provider submits a treatment plan to a third party before treatment is initiated.  The third party usually reviews the treatment plan, and  advises the health provider regarding one or more of the following: patient's eligibility, guarantee of eligibility time, covered service, amounts payable, application of appropriate deductibles, copayment factors and maximums.

1.33    Prescription Drug Benefits

means coverages or reimbursements available for Covered Services that are listed in Appendix A.



1.34   Trust Agreement

means the Trust Agreement provided for in Article XII hereof, as may be amended from time to time.

1.35   Trust Fund

means all Contributions of Employers and Participants held by the Trustee under the Trust Agreement, together with all earnings and increments thereon.

1.36   Trustee

means the trustee appointed under the Trust Agreement.

1.37   Vision Benefits

means coverages or reimbursements available for Covered Services for vision care that are listed in Appendix A.



## ARTICLE II - ADMINISTRATION OF THE PLAN

2.1   Plan Administrator

The Plan shall be administered by an Administrative Committee (hereinafter referred to as the "Administrative Committee" or the "Administrator").   The members of the Administrative Committee initially shall be (1) the Manager - Employee Services, Oilfield Services, (2) the Manager, Benefits, Schlumberger Limited, New York, (3) the Manager, Benefit Plan Compliance, Schlumberger Limited, New York, and (4) the Director of Personnel, Schlumberger Limited, New York, along with any other appointment (by title or position) by the Board of Directors, all of whom shall serve at the pleasure of the Board of Directors.  The Board of Directors shall have the right to change the title or positions that serve as members of the Administrative Committee at any time and from time to time. The Administrative Committee shall normally consist of at least four persons; however, during interim periods which occur after the resignation or death of a member and before the appointment of such member's successor, the Administrative Committee may temporarily have fewer than four members. For purposes of ERISA, the Administrative Committee shall be the Plan "administrator" and shall be the "named fiduciary" with respect to the general administration of the Plan (except as to the investment of the assets of any Trust Fund).

2.2   Finance Committee

The Finance Committee shall be the committee appointed under the Trust Agreement.

2.3   Records of Administrative Committee

The Administrative Committee shall make available to Participants for examination, during normal business hours, such records of the Benefit Programs as pertain to the examining person and such documents relating to the Benefit Programs as are required by ERISA.

2.4   Administrative Committee Action

The Administrative Committee shall act by majority decision of its members at the time in office and such action may be taken either by vote at a meeting, whether held in person or by a telephone conference, or in writing without a meeting.  The Administrative Committee may adopt such rules, regulations and bylaws as it deems desirable for the conduct of its affairs. The Administrative Committee may authorize any one or more of its members or an agent to execute any document or documents on behalf of the Administrative Committee, in which event the Administrative Committee shall notify the Trustees in writing of such action and the name or names of its member or members or other agent so

EXHIBIT F
Page 14 of 22

designated if such authorization affects the Trustees. The Trustees thereafter shall accept and rely upon any document executed by such member or members or agent as representing the action of the Administrative Committee, until the Administrative Committee shall file with the Trustees a written revocation of such designation. Upon the approval of all of the members of the Administrative Committee, the Administrative Committee may (i) allocate among any of its members any of the responsibilities of the Administrative Committee under the Plan, Trust Agreement and/or (ii) designate any person, firm or corporation that is not a member of the Administrative Committee to carry out any of the responsibilities of the Administrative Committee under the Plan, and/or Trust Agreement. Any such allocation or designation shall be made pursuant to a written instrument executed by all of the members of the Administrative Committee or by a single member of the committee reflecting the approval described above. The Chairman of the Administrative Committee shall be agent of the Plan and the Administrative Committee for the service of legal process at the New York City office of Schlumberger Limited.

2.5    Duties and Action of Finance Committee

The Finance Committee shall direct the Trustees with respect to the general investment policy to be followed in investing any Trust Fund, and shall have such other powers and duties as set forth in the Trust Agreement. The Trustees shall invest and reinvest the Trust Fund or shall cause the Trust Fund to be invested and reinvested in accordance with the provisions of the Trust Agreement.

The Finance Committee shall act by a majority of its members at the time in office and such action may be taken either by a vote at a meeting, whether held in person or by a telephone conference, or in writing without a meeting. The Finance Committee may, by such majority action, authorize any one or more of its members or an agent to execute any document or documents on behalf of the Finance Committee, in which event the Finance Committee shall notify the Trustees in writing of such action and the name or names of its member or members or other agents so designated if such authorization affects the Trustees. The Trustees thereafter shall accept and rely upon any document executed by such member or members or agent as representing the action of the Finance Committee, until the Finance Committee shall file with the Trustees a written revocation of such designation.

Upon the approval of a majority of the members of the Finance Committee, the Finance Committee may (i) allocate among any of its members any of the responsibilities of the Finance Committee under the Plan and Trust Agreement and/or (ii) designate any person, firm or corporation that is not a member of the Finance Committee to carry out any of the responsibilities of the Finance Committee under the Plan and/or Trust Agreement. Any such allocation or designation shall be made pursuant to a resolution adopted by a Finance Committee or to a written instrument executed by a majority of the members of

EXHIBIT  E
Page 15 of 22

the Finance Committee or by a single member of the committee reflecting the approval described above.

### 2.6    Committee Member Disqualification

A member of a Committee who is a Participant shall not vote on any question relating specifically to himself.

### 2.7    Compensation, Expenses and Advisers of the Committees

The members of the Administrative Committee and the Finance Committee (hereinafter sometimes referred to individually as the "Committee" or jointly as the "Committees") shall serve without bond (unless otherwise required by law) and without compensation for their services as such. A Committee may select, and authorize the Trustees to compensate suitably, such attorneys, agents and representatives as it may deem necessary or advisable to the performance of its duties. All expenses of the Committees that shall arise in connection with the administration of the Plan shall be paid by the Employers or by the Trustees out of the Trust Fund.

### 2.8    Liability of the Committees

Except to the extent that such liability is created by ERISA, no member of a Committee shall be liable for any act or omission of any other member of a Committee, nor for any act or omission on his own part except for his own gross negligence or willful misconduct. The Company shall indemnify and hold harmless each member of the respective Committees from any and all claims, losses, damages, expenses (including counsel fees approved by such Committee), and liabilities arising from any act or omission of such member in connection with duties and responsibilities under the Plan and Trust Agreement, except when the same is judicially determined to be due to the gross negligence or willful misconduct of such member.

### 2.9    Committee Determinations

The Administrative Committee, on behalf of the Participants and their Beneficiaries, shall enforce the Plan in accordance with its terms and shall have all powers necessary for the accomplishment of that purpose, including, but not by way of limitation, the following powers:

(a)    To determine all questions relating to the eligibility of Employees to become Participants;

(b)    To authorize all disbursements by the Trustees from the Trust Fund, including payments of Benefits, administrative costs of the Plan and premiums under Insurance Contracts;

F
16 of 22

(c)  To interpret and construe, in its sole discretion, all terms, provisions, conditions and limitations of the Plan and of any Benefit Program adopted hereunder and to reconcile any inconsistency or supply any omitted detail that may appear in the Plan or in any Benefit Program adopted hereunder in such manner and to such extent, consistent with the general terms of the Plan and of any Benefit Program adopted hereunder, as the Committee shall deem appropriate to effectuate the Plan and any Benefit Program adopted hereunder; and

(d)  To make and enforce such rules and regulations for the administration of the Plan as are not inconsistent with the terms set forth herein.

The Finance Committee shall have all power necessary or appropriate to carry out its duties specified hereunder, including, but not by way of limitation, the power to determine and communicate to the Trustee the method and policy of funding.

## 2.10  Information from Employer

To enable the Administrative Committee to perform its functions, each Employer shall supply full and timely information to the Administrative Committee or its designee who is or may be responsible for providing administrative services, or insurance under a Benefits Program, of all matters relating to the dates of employment of its Employees for purposes of determining eligibility of Employees to participate hereunder, their retirement, death or other cause for termination of employment, and such other pertinent facts as the Administrative Committee may require. The Administrative Committee shall advise the Finance Committee and Trustees of such of the foregoing facts as may be pertinent to administration of the Trust Fund.

## 2.11  General Powers of Administrative Committee

In addition to all other powers herein granted, and in general consistent with the provisions hereof, the Administrative Committee shall have all other rights and powers reasonably necessary to supervise and control the administration of the Plan.  The determination of any fact by the Administrative Committee and the construction placed by the Administrative Committee upon the provisions of the Plan shall be binding upon all of the Participants under the Plan and the Employers.

## 2.12  Uniform Administration

Whenever in the administration of the Plan any action is required by an Employer, the Finance Committee or the Administrative Committee, including, but not by way of limitation, action with respect to eligibility of Employees, Contributions and Benefits, no action shall be taken which will discriminate in


Exhibit F
Page 17 of 22
Page          12

favor of Participants who are officers or shareholders of an Employer or highly compensated Employees.

2.13   Reporting Responsibilities

As Administrator of the Plan under ERISA, the Administrative Committee shall file with the appropriate office of the Internal Revenue Service or the Department of Labor all reports, returns and notices required under ERISA, and any other reports required by the Code. In addition, the Committee shall file required information as specified under any state temporary disability statute.

2.14   Disclosure Responsibilities

The Administrative Committee shall make available to each Participant such records, documents and other data as may be required under ERISA, and Participants shall have the right to examine such records at reasonable times during normal business hours. Nothing contained in the Plan shall give any Participant the right to examine any data or records reflecting the compensation paid to, or relating to any account of, any other Participant, except as may be required under ERISA.

2.15   Allocation of Responsibility Among Fiduciaries for Plan and Trust Administration

The Fiduciaries shall have only those specific powers, duties, responsibilities and obligations as are specifically given them under the Plan or Trust. In addition to those powers and responsibilities given to the Fiduciaries elsewhere in this Plan or the Trust, the following apply.

(a)   Employers shall have the sole responsibility for forwarding the Contributions provided for under Article VIII to the appropriate Trustee.

(b)   The Company shall have the sole authority to appoint and remove the Trustees and members of the Administrative Committee.

(c)   Each Trustee shall have the sole responsibility for the administration of the Trust, as applicable, and the management and control of the assets held under the Trust, as applicable, except to the extent such authority to manage the assets of the Trust Fund is delegated to an Investment Manager, all as specifically provided in the Trust.

(d)   The Administrative Committee shall have the sole authority and responsibility for the administration of the Plan, including the authority to direct any Employer to enter into any administrative services contract.

(e)   The Board of Directors of Schlumberger Limited shall have the sole authority to appoint and remove members of the Finance Committee.

(f)   The Finance Committee and the Administrative Committee shall have joint authority and responsibility to appoint and remove any Insurer and direct

Exhibit  F
Page 18 of 22

the Employers or Trustees to acquire or dispose of any Insurance Contract.

(g)    The Finance Committee shall have sole authority and responsibility to appoint and remove any Investment Manager which may be provided for under the Trust and to monitor the performance of the Trustees and any such Investment Manager, unless otherwise provided in the applicable Trust Agreement.

(h)    Each Fiduciary may rely upon any direction, information or action of another Fiduciary as being proper under the Plan or the Trust, and is not required under the Plan or the Trust to inquire into the propriety of any such direction, information or action. It is intended under the Plan and the Trust that each Fiduciary shall be responsible for the proper exercise of its own powers, duties, responsibilities, and obligations under the Plan and the Trust and shall not be responsible for any act or failure to act of another Fiduciary. No Fiduciary guarantees the Trust Fund in any manner against investment loss or depreciation in asset value.

2.16    <u>Annual Audit</u>

If required by ERISA, the Administrative Committee shall engage, on behalf of all Participants, an independent Certified Public Accountant who shall conduct an annual examination of any financial statements of the Plan and Trust and of other books and records of the Plan and Trust as the Certified Public Accountant may deem necessary to enable him or her to form and provide a written opinion as required by such law. If, however, the statements required to be submitted as part of the reports to the Department of Labor are prepared by a bank or similar institution or insurance carrier regulated and supervised and subject to periodic examination by a state or federal agency and if such statements are certified by the preparer as accurate and if such statements are, in fact, made a part of the annual report to the Department of Labor and no such audit is required by ERISA then the audit required by the foregoing provisions of this Section shall be optional with the Administrative Committee.



## ARTICLE III - ELIGIBILITY AND PARTICIPATION

3.1    <u>General</u>

The information in this Article is intended to provide additional detail which may not be set out in Appendices.  Any provision of a Benefit Program which is not consistent with a provision of this Article III, shall govern over the inconsistent provision of this Article III.

Eligibility for Benefits shall be determined in accordance with each Benefit Program adopted by an Affiliate as set out in Appendices.

3.2    <u>Failure to Enroll Promptly</u>

An Employee who does not elect coverage within the prescribed time period under the applicable Appendix may be required to provide evidence of good health for any future coverage under the Plan, if coverage is requested prior to the next Annual Enrollment period.  The provisions of this Section 3.2 do not apply to Qualified Medical Child Support Orders or certain coverage as required by HIPAA.  The fee for any examination required under this Section shall be paid by the Employee or other person requesting coverage.

An Employee who does not reject coverage, but instead does not complete and submit the enrollment materials, shall be enrolled in the middle-priced indemnity plan option, at a single-employee level of coverage.  This coverage shall be considered "default coverage" and shall cover only the Employee.  The Administrative Committee may determine the appropriate default coverage on an annual basis for the upcoming calendar year during each Annual Enrollment.

3.3    <u>Annual Enrollment</u>

At the end of each calendar year, each Employer will hold an Annual Enrollment period for the following Plan Year during which Employees may elect Benefit Program coverages for which they are eligible.  The Annual Enrollment period shall be held in the fourth quarter of the year prior to the Plan Year for which coverage shall be in effect, and shall be not less than 21 calendar days in length. An Employee who elects to be covered under the Plan will have his coverage go into effect on January 1 of the year following the close of the Annual Enrollment period.

Changes to Benefit Program elections shall only be permitted on account of a Qualified Change in Status, as set forth in Section 15.1, or during a subsequent Annual Enrollment.


Exhibit F
Page 20 of 22

A Participant may cease participation in any Benefit Program upon 31-days advance written notice to the Administrative Committee or its designee of the Participant's intention to discontinue required contributions.

### 3.4     Benefit Commencement

(a)     Benefits for an Employee who elects to become a Participant in any Benefit Program shall commence on the latest of:

    (i)     the first day the Participant is Actively at Work;

    (ii)     the date the Participant has validly elected to commence coverage and any required Participant Contributions commence; or

    (iii)     the day a Pre-existing Conditions limitation, if any, ceases.

(b)     Benefits for a Dependent who becomes covered by the Plan shall commence on the later of:

    (i)     the date the coverage of the Employee of whom he or she is a Dependent would have commenced notwithstanding the provisions of Section 3.4(a)(i) or Section 3.4(a)(iii); or

    (ii)     the date the Employee of whom he or she is a Dependent has elected coverage for the Dependent, provided any required Participant Contributions have commenced.

(c)     For purposes of this Section, Actively at Work shall mean:

    (i)     on the Employee's first day of employment, reporting for work at the Employee's usual workplace or at another location to which the Employee is required to travel in performance of his duties; or

    (ii)     on any other day, completion of the duties of his job for a full normal workday at the Employee's usual workplace or at another location to which the Employee is required to travel in performance of his duties.

### 3.5     Termination

(a)     Benefit coverage shall terminate on the Participant's last day of work as an Employee.  Notwithstanding the immediately preceding sentence, if the applicable Benefit Program permits the continuation beyond the Participant's termination date, such coverage may continue in accordance with the applicable terms of such Benefit Program, as stated in the applicable Appendix.

(b)     Under certain circumstances, at its discretion, an Employer may continue Benefit Program coverage beyond the otherwise applicable date of termination for any Participant provided:

Exhibit F
Page 21 of 22

<ol type="i">
<li>such continuation does not jeopardize the tax-qualification status of any Benefit Program;</li>
<li>the Administrative Committee, or authorized representative, has approved the continuation of the Benefit Program for such Participant; and</li>
<li>the continuation is of a limited duration, not to exceed one (1) year, unless otherwise required by state or federal law.</li>
</ol>

3.6    <u>Participants to Furnish Required Information</u>

As a condition of receiving coverage or Benefits under any Benefit Program, each Participant shall furnish the Administrative Committee with such information as the Administrative Committee may consider to be necessary or desirable in administering the Plan.

3.7    <u>Discrimination in Favor of Highly Compensated</u>

The Plan is intended to not discriminate in favor of highly compensated individuals as to eligibility to participate, Contributions, or Benefits in accordance with applicable provisions of the Code. The Plan Administrator may take such actions as excluding certain highly compensated individuals from participation in the Plan if, in the Plan Administrator's judgment, such actions serve to assure that the Plan does not violate applicable nondiscrimination rules.

3.8    <u>Other Discrimination</u>

The Plan shall not discriminate in determining:

(a)    eligibility to enroll or eligibility for Benefits based on health status-related factors set forth in HIPAA, including:

<ol type="i">
<li>health status,</li>
<li>medical condition (physical or mental),</li>
<li>claims experience,</li>
<li>receipt of healthcare,</li>
<li>medical history,</li>
<li>genetic information,</li>
<li>evidence of insurability, and</li>
<li>disability; or</li>
</ol>

(b)    other factors as may be added to HIPAA or associated regulations in the future.

