inference that the decision-maker was aware of his complaints).[6]

Steve Laughlin made the decision to terminate Bresser's services. (Ex. C, Defendant's Responses to Plaintiff's First Discovery Requests, at 10.) He did this based upon the concerns that Jeff Culbertson had communicated regarding his difficulty in supervising Bresser and Bresser's refusal to discuss those problems. (*Id.* at 10 & 12.) Bresser conceded that he has no evidence that Jeff Culbertson, Laughlin or Burton had any knowledge that Bresser had spoken with John Yearwood or Eric Larson about the misdiagnosed failures or anything else. (Ex. A, Bresser Dep. at 98-101, 109 & 111.)

Bresser assumes that his supervisors must have known about his conversations with Larson because they made some general inquiries about what was going on with him. (*Id.* at 84-86, 101 & 109.) However, Bresser's own description of the conversations indicate that these discussions were not about his conversations with Larson. (*Id.* at 59-61, 109-110.) Bresser claims that in early July 2005, Steve Laughlin and John Burton called him into the Schlumberger

---

[6] *See also, Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 339 (5th Cir. 1999) (dismissing retaliation claim for failure to establish a *prima facie* case because plaintiff did not show that the decision-maker was aware that plaintiff engaged in protected activity); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994) (dismissing claim because no evidence that a relevant decision-maker knew that plaintiff had complained of discrimination); *Hudson v. Southern Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir. 1988) (dismissing claim because decision-maker was unaware that plaintiff had filed a complaint with the EEOC); *Talley v. United States Postal Serv.*, 720 F.2d 505, 508 (8th Cir. 1983) (dismissing claim because no evidence that supervisor, who made adverse personnel decision, was aware that plaintiff had engaged in a protected activity).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

office in Anchorage and asked him general questions about what was going on. They then proceeded to explain to him that they were hearing reports that Bresser was difficult to work with.  (*Id.* at 59 & 109-110.)  Bresser states that Burton spoke about Bresser's attitude and mentioned that Bresser was being belligerent. (*Id.* at 59.)  He also recalled that they told him that they had heard that he was "having problems with people on the Slope." (*Id.* at 110.)  Bresser concedes that in this meeting, Burton and Laughlin talked to him about the damage he had done to a nuclear source box by adjusting a forklift on the box.  (*Id.* at 60-61.)  Thus, Bresser's own description of the conversations he relies upon demonstrates only that his supervisors had concerns about his conduct, not that they were aware of Bresser's discussions with Larson or Yearwood.

Bresser appears to have jumped to the conclusion that Laughlin and Burton knew he had spoken to Larson.  Regardless of whether this was reasonable on Bresser's part, this type of speculation and/or opinion is just the type of unsupported conclusion that courts routinely find is insufficient to overcome a motion for summary judgment. *See Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991), *cert. granted*, 503 U.S. 958 (U.S. 1992), and *aff'd*, 508 U.S. 49 (U.S. 1993); *Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1998), *amended*, 46 Empl. Prac. Dec. (CCH) ¶ 37,996 (9th Cir. 1988); *see also, French v. Jadon, Inc.*, 911 P.2d 20, 25 n.3 (Alaska 1996) (speculation and unsupported conclusions will not

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

create a genuine issue of material fact).[7]

Thus, not only has Bresser failed to show that he engaged in protected activity, he has come forward with no admissible evidence that would tend to demonstrate that there was a causal relationship between his alleged activity and Schlumberger's termination of his services. Accordingly, Schlumberger should be granted summary judgment on Bresser's wrongful termination claim and the claim should be dismissed with prejudice.

**C.    Bresser Has Alleged No Evidence In Support of His Defamation Claim that would Create an Issue of Material Fact.**

Bresser alleges a claim for defamation in his First Amended Complaint. (Ex. H, First Amended Complaint at ¶¶ 11-13.) At his deposition, Bresser testified that he was only aware of one false and defamatory statement that had been made about him. (Ex. A, Bresser Dep. at 124.) He alleged that some unidentified person had told some of his former co-workers that he "quit, didn't want to come back to work." (*Id.* at 122.) Bresser stated that he knows of no other "untrue" statements that Schlumberger has made about him. (*Id.* at 124.)

---

[7] *See also, Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 339 (5th Cir. 1999) (inadmissible hearsay insufficient to prevent summary judgment on retaliation claim); *Flannery v. TWA*, 160 F.3d 425, 428 (8th Cir. 1998) (holding that "conclusory" statements in an affidavit were not enough to avoid summary judgment); *Helfter v. UPS*, 115 F.3d 613, 616 (8th Cir. 1997) (holding conclusory statements, standing alone, are insufficient to withstand a properly supported motion for summary judgment); *White v. State*, 131 Wn.2d 1, 17, 929 P.2d 396 (1997) (granting summary judgment for employer, finding that employee's evidence in support of her first amendment retaliation claim was "speculative" and employee "ask[ed] the court to infer [retaliation] from the timing").

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Bresser's defamation claim fails as a matter of law for two reasons. First, Bresser has failed to allege facts sufficient to state a claim for defamation. Second, the statement alleged by Bresser does not satisfy the required elements of a defamation claim.

**1.     Bresser has not identified the speaker of the alleged defamatory statement and, accordingly, he has not alleged evidence sufficient to support his defamation claim.**

At Bresser's deposition he was asked "What is this claim based on? What was said about you that you think was false or defamatory?" (Ex. A, Bresser Dep. at 122.) Bresser answered: "From what other people told me is that supposedly I quit, didn't want to come back to work. That's what management has been telling them." (*Id.*) Bresser claims he heard this from Randy Kockritz, a former co-worker. (*Id.*) When asked if Bresser was sure that Kockritz had told him that someone from management had made this statement, Bresser clarified that Kockritz had said: "that's what town told us." (*Id.* at 124.)

Bresser's deposition testimony does not provide admissible proof that an agent of Schlumberger (someone for whom Schlumberger is liable) made the alleged statement. Bresser concedes that he has no idea who made the statement and that he cannot identify a specific member of management or a particular employee of Schlumberger as being the person who made the alleged statement. (Ex. A, Bresser Dep. at 120-124.) Instead, Bresser assumes, based upon vague hearsay statements made by one of his former co-workers, that this alleged statement was made by someone in management, but admits that all he has been told by the co-worker is that the statement came from "town." (*Id.* at 124.)

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Courts have generally recognized that a plaintiff cannot sustain a defamation claim without identifying a speaker, the content of the statement, and the context of the statement. *See e.g., Kling v. Harris Teeter Inc.*, 338 F.Supp.2d 667, 672 (W.D.N.C. 2002), *affd. by* 86 Fed.Appx. 662 (4th Cir. 1004) (rejecting defamation claim where plaintiff "does not identify the speaker or the communication" . . . "No cause of action can lie where there is no supporting evidence"); *French v. Eagle Nursing Home, Inc.*, 973 F.Supp. 870, 883-84 (D. Minn. 1997) (dismissing defamation claims for failure to "identify who made the defamatory statement and what was said"); *Hoffman v. Hill and Knowlton, Inc.*, 777 F.Supp. 1003, 1005 (D.D.C. 1991) (Plaintiff failed to state a claim where he did not provide the "time and place of the alleged communication to employees and others" or "the content of the alleged statement, the speaker, or the listener").

Bresser cannot identify the speaker, the time, place or context of the alleged statement, and thus it is impossible for the court to evaluate if the statement creates liability for Schlumberger. For example, without knowing who the speaker is, the court cannot determine if he or she is an agent of Schlumberger's, and thus is someone for whom Schlumberger is liable. Bresser is assuming that the speaker was from management—but he concedes he has no direct knowledge of who the speaker is and that his assumptions are based upon hearsay from Kockritz that the comment "came from town." (Ex. A, Bresser Dep. at 124.) Plaintiff's allegations, speculations, or conclusions, as well as inadmissible evidence, are insufficient to overcome a motion for summary judgment. *See Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991), *cert. granted*, 112 S. Ct. 1557

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

(U.S. 1992), and *aff'd*, 113 S. Ct. 1920 (U.S. 1993); *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir.), *amended*, 46 Empl. Prac. Dec. (CCH) ¶ 37,996 (9th Cir. 1988). Testimony that fails to establish that it is based on personal knowledge is inadmissible under Federal Rule of Evidence 602 and Federal Rule of Civil Procedure 56(e). *U.S. v. Aetna Cas. & Sur. Co.*, 981 F.2d 448, 455 (9th Cir. 1992).

In sum, Bresser has not produced any admissible evidence supporting his defamation claim and admits that he does not have any direct knowledge that the statements were actually made. He cannot identify who allegedly made the statement, provide the context in which the statement was made or even state specifically what was said. This type of speculation and multiple hearsay is not sufficient to support a defamation claim and, accordingly, the claim should be dismissed.

**2.    The facts taken in a light most favorable to Bresser do not establish the required elements of a defamation claim.**

Even if Bresser had identified a speaker, he has not alleged facts that would state a claim for defamation. To prevail on a claim of defamation, a plaintiff must establish: (1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) the existence of either "*per se*" actionability or special harm. *See Kinzel v. Discovery Drilling, Inc.*, 93 P.3d 427, 441 n.60 (Alaska 2004), *citing French v. Jadon*, 911 P.2d 20, 32 (Alaska 1996); *see also, Odom v. Fairbanks Memorial Hosp.*, 999 P.2d 123, 130 (Alaska 2002). Bresser has not produced admissible evidence that would establish three of these elements.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

DEFENDANT SCHLUMBERGER'S MOTION FOR SUMMARY JUDGMENT
ON REMAINING CLAIMS                    - 27 -              [33454-0002-000000/12545284_1.DOC]
33454-0002/LEGAL12545284.1

a.   **The alleged statement is not false or defamatory.**

The first element a plaintiff must establish in a defamation claim is "a false and defamatory statement". *Kinzel*, 93 P.3d at 441 n.60.  The statement alleged by Bresser – that he "quit" and "did not want to come back to work" – is neither false nor defamatory.

First, "[a] communication is defamatory if it tends to harm the reputation of another so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her." *French*, 911 P.2d at 32 (internal quotations omitted).  The Alaska Supreme Court has long held that a statement that an individual was "fired" is not defamatory.  *Fairbanks Pub. Co. v. Pitka* (*Pitka II*), 445 P.2d 685 (Alaska 1968).  In *Pitka II*, the Court addressed a libel action by a school teacher against the publisher of a newspaper, which had indicated that the teacher had been fired in an article.  *Pitka II*, 445 P.2d at 689. The Court reasoned: "The right to hire implies the right to fire, and therefore a statement that the latter right has been exercised by one's employer does not necessarily have a tendency to injure or discredit the employee who has been discharged." *Id.*, *see also, Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1583 (9th Cir. 1996) ("We fail to see how the first statement-that [the plaintiff] was terminated because she was unable to work-is defamatory in nature"); *Benic v. Reuters America, Inc.*, 357 F.Supp.2d 216, 221-22 (D.D.C. 2004) (holding that announcement of employee's departure, without sufficient evidence that notice "implied criminal or unethical conduct" was not defamatory); *Slade v. Metropolitan Life Insurance Co.*, 255 A.D.2d 130, 131 (N.Y. 1998)

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

(holding that statement that plaintiff had been fired and description of contested reason for departure not sufficient for defamation).

Similarly, there have been few cases addressing statements that someone quit or resigned. However, a Texas Court of Appeals rejected a libel claim based on the statement in a letter that the plaintiff was "voluntarily terminated", holding that a statement that plaintiff quit was not defamatory. *See Cram Roofing Co. v. Parker*, 131 S.W.3d 84, 90 (Tex.App-San Antonio 2003) *citing San Antonio Express News v. Dracos*, 922 S.W.2d 242, 248 (Tex.App.-San Antonio 1996, no writ.). The Alaska Supreme Court, in *Pitka II,* suggested that a statement that an employee resigned is even less injurious than one stating that the employee had been terminated. *Pitka II*, 445 P.2d at 689 ("[O]ne would not ordinarily think ill of the employee who lost his job . . . he may have resigned").

The statement that someone "quit" is just not the type of statement that is likely to injure someone's reputation. Consistent with this, Bresser stated that he has no evidence indicating that the alleged statement has impacted his reputation or harmed him in any manner. (Ex. A, Bresser Dep. at 123-124.) Bresser did not even know the comment was made until a month before his deposition and months after this case was filed. (*Id.* at 123.)

Second, to state a claim for defamation the alleged statement must be false. While Laughlin did eventually tell Bresser that his services were no longer going to be used by Schlumberger, Bresser's own testimony indicates that he engaged in conduct that could have been interpreted as a resignation. Bresser testified that he made a telephone call when he was in a meeting with Steve Laughlin and John Burton and during this call he told the person on the other end

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

of the line that he would go to work for him. (*Id.* at 59-60.) It turns out that the person on the telephone was Bresser's father, but Bresser did not tell Burton and Laughlin this. (*Id.* at 59-60 & 122.) This call certainly would give the appearance of a resignation. Thus, if the alleged statement was made before Laughlin spoke with Bresser to clarify Bresser's status, the statement would have been true.

Accordingly, Bresser has not produced admissible evidence tending to show that a false and defamatory statement was made about him by an agent of Schlumberger.

> **b.    The alleged statement was a privileged communication.**

The second element Bresser must establish is an unprivileged publication to a third party. *See Kinzel*, 93 P.3d at 441 n.60; *French*, 911 P.2d at 32; *Odom*, 999 P.2d at 130; *see also, McAdoo v. Diaz*, 884 P.2d 1385, 1390 (Alaska 1994) (Both truth and privilege are defenses to defamation claims).

First, Bresser has provided no evidence that the statement was published to a third party. The Alaska Supreme Court has yet to address the question of whether intra-office or intra-company communications constitute a publication under libel or slander law. However, numerous other courts have held that intra-company communications do not constitute actionable "publications" for the purpose of libel or slander claims. *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1552 (10th Cir. 1995); *Crowe v. Wiltel Communication Sys.*, 103 F.3d 897, 899 (9th Cir. 1996) (communications between agents, employees, or officers of a corporation are not "published" for purposes of defamation); *Rice v. Comtk Mfg. of Oregon, Inc.*, 766 F.Supp. 1550, 1551 (D.Ore. 1990); *Cabble v. Claire's Stores, Inc.*, 919 F.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Supp. 397, 402 (M.D. Ala. 1996) (communications between managerial employees do not constitute publication; communications between non-managerial employee's are not publication if they fall within the proper scope of that employee's knowledge or duties); *Messina v. Kroblin Transp. Sys. Inc.*, 903 F.2d 1306, 1309 (10th Cir. 1990); *M.F. Patterson Dental Supply Co. v. Wadley*, 401 F.2d 167, 171 (10th Cir. 1968).

For example, the Tenth Circuit held in *Starr* that publication "is the communication of defamatory matter to a third person or persons, and that neither agents nor employees of a company are third persons in relation to the corporation because 'they are part and parcel of the corporation itself.'" 54 F.3d at 1552 (quoting *Magnolia Petroleum Co. v. Davidson*, 148 P.2d 468, 471 (Okla. 1944)). The court went on to conclude: "For a corporation, therefore, acting through one of its agents or representatives, to send a libelous communication to another of its agents or representatives, cannot be a publication or libel on the part of the corporation." *Starr*, 54 F.3d at 1553.

Similarly, the Ninth Circuit applying Nevada law affirmed summary judgment where the plaintiff "did not present any evidence that the statements about which she complains were communicated to anyone not a Wiltel employee." *Crowe*, 103 F.3d at 900. The court concluded that the plaintiff had failed to prove publication in this case. *Id.*

Bresser seeks to hold Schlumberger liable for an alleged statement that some employee or manager from Schlumberger made to other Schlumberger employees. Accordingly, Bresser has not alleged that the statement in question was published to a third party.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Second, even if the statement is considered to be published, the communication alleged is privileged. Whether the occasion gives rise to a privilege is a question of law. *Schneider v. Pay'N Save Corp.*, 723 P.2d 619, 623 (Alaska 1986). The Alaska Supreme Court has adopted the Restatement (Second) of Torts § 595 requirements for the existence of a conditional privilege. The Restatement provides:

> An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that
> (a) there is information that affects a sufficiently important interest of the recipient or a third person, and
> (b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is **a person to whom its publication is otherwise within the generally accepted standards of decent conduct**.

*Schneider*, 723 P.2d at 623, (quoting Restatement (Second) Torts § 595) (emphasis added); *see also, French*, 911 P.2d at 33; *Jones v. Central Peninsula Gen. Hosp.*, 779 P.2d 783, 790 (Alaska 1989).

The Alaska Supreme Court has expressly recognized that communications between employees fall within the scope of this privilege: "Specifically, [the Court] has recognized a conditional privilege based on . . . an employee/employer relationship when a statement is made 'for the protection of a lawful business, professional, property or other pecuniary interest.'" *Briggs v. Newton*, 984 P.2d 1113, 1121 (Alaska 1999) (footnotes omitted) (regarding communications about a contractor's bid).

In *Schneider*, the Court first recognized a conditional privilege based upon an employment relationship. 723 P.2d at 624. The plaintiff in *Schneider*

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

complained that she had been defamed by her employer's loss prevention manager.
The plaintiff alleged that the manager had defamed her when he accused her of
stealing after she had failed to record two purchases and her cash drawer was
found to be short money.  The Court found that the manager's statements to other
representatives of the employer were privileged because the plaintiff's failure to
ring-up purchases affected a "sufficiently important interest" of the employer.  The
Court also found that the manager had a duty to report these failures of the
plaintiff to the employer.  Based on these findings, the Court held that the
manager's statements were conditionally privileged. *Id.* at 624.

In *Jones v. Central Peninsula General Hosp.*, the Court again affirmed
that statements within the employment context were conditionally privileged.
There a nurse brought an action claiming that the head nurse had defamed her by
recording statements about her mental condition in the plaintiff's personnel file.
The Court concluded that the information recorded in the plaintiff's file was
"sufficiently important" to the employer's interests to justify transmittal to the
employer and that the head nurse, as the plaintiff's supervisor, had a duty to report
her concerns about the nurse's emotional problems to the employer. *Jones*, 779
P.2d at 789-90.

Additionally, many other courts have specifically held that statements
between employees about the status of another employee or the reasons for the
termination of a co-worker or subordinate are privileged.  *See, e.g., Brehany v.
Nordstrom, Inc.*, 812 P.2d 49, 59 (Utah 1991) (statement to a group of managers
about why an employee was terminated is conditionally privileged); *Wirig v.
Kinney Shoe Corp.*, 461 N.W.2d 374, 379-80 (Minn. 1990) (statements made to

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

employees concerning the reasons for another employee's discharge are also subject to a qualified privilege); *Bickford v. Tektronix, Inc.*, 842 P.2d 432, 434 (Or. App. 1992); *Gordon v. Tenneco Retail Serv. Co.*, 666 F. Supp. 908, 911 (N.D. Miss. 1987) (Mississippi has recognized "that a statement by a manager to a group of employees that an employee was fired for theft was a privileged statement").

Bresser alleges that Kockritz told him that "town" told Bresser's co-workers that he had quit. Such a communication would be just the type of communication that the conditional privilege discussed above allows a manager and/or supervisor to make to co-workers of the employee who is no longer employed. Thus, the alleged statement, if it was made by a Schlumberger manager, as Bresser presumes, was not published and was a privileged communication.

### c.    The alleged statement was not defamatory let alone defamatory *per se* and Bresser admits that he has suffered no special damages.

To state a claim for defamation, the plaintiff must be able to show either that he suffered special harm or that the allegedly defamatory statements were *per se* defamatory. *City of Fairbanks v. Rice*, 20 P.3d 1097, 1107 (Alaska 2000); *Kinzel*, 93 P.3d at 441 n.60; *French*, 911 P.2d at 32.

First, for a statement to be defamatory *per se*, "the words used must be so unambiguous as to be reasonably susceptible of only one interpretation—that is, one which has a natural tendency to injure another's reputation." *French*, 911 P.2d at 32, (quoting *Fairbanks Pub. Co. v. Pitka*, 376 P.2d 190, 194 (Alaska 1962) (*Pitka I*)); *see also, Spence v. Southeastern Alaska Pilots' Assoc.*, 789 F.Supp.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

1014, 1028 (D. Alaska 1992).

The Alaska Supreme Court has only found that three types of statements are defamatory *per se*:  statements imputing serious sexual misconduct;[8] statements imputing a serious crime to the plaintiff if the offense imputed is punishable by imprisonment or regarded by public opinion as involving moral turpitude;[9] or words that affect a plaintiff's credit and financial reputation by imputing financial difficulty or dishonesty.[10]

The statement Bresser has alleged does not impute serious sexual misconduct, criminal conduct, or financial difficulty or dishonesty.  The alleged statement is not in any way similar in nature to the type of statement the Court has found to be defamatory *per se*.  Moreover, when faced with a much more analogous statement – a statement that an employee had been fired – the Court held that the statement was not defamatory per se.  *Pitka II*, 445 P.2d at 689.  In *Pitka II*, the Court recognized that "[t]he assertion that one had been fired from his employment is not defamatory per se, *i.e.*, as a matter of law." *Id.* at 689.

Second, Bresser has not alleged and cannot demonstrate that he suffered special damages as a result of the alleged statement.  Special damages are actual economic or pecuniary losses.  *See Alaska Statebank v. Fairco*, 674 P.2d 288, 295 (Alaska 1983).  To satisfy this element of a defamation claim, the plaintiff must

---

[8] *City of Fairbanks*, 20 P.3d 1097; *French*, 911 P.2d at 32.

[9] *French*, 911 P.2d at 33.

[10] *Alaska Statebank v. Fairco*, 674 P.2d 288, 295 (Alaska 1983).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

show a causal connection between the allegedly false statements and some actual pecuniary loss. *See Johnson v. Alaska Dep't of Fish & Game*, 836 P.2d 896, 909-10 (Alaska 1991) (special damages distinguished from compensatory damages).

However, Bresser has not alleged that he suffered any economic or pecuniary loss as a result of the statement. Bresser was unable to identify any monetary damage he has suffered because of this statement. (Ex. A, Bresser Dep. at 123.) He concedes that this statement has not impacted his ability to find work. (*Id.* at 124.) In his statement of the damages he has suffered he lists "special damages", but indicates that they are "to be determined." (*See* Ex. A, Bresser Dep. Exhibit 10.) However, at his deposition, Bresser was unable to provide any evidence that the alleged statement has caused him any harm, let alone specific pecuniary loss. (Ex. A, Bresser Dep. at 120-124.) Thus, Bresser has come forward with no admissible evidence demonstrating that he has suffered pecuniary loss caused by the statement at issue.

In the end, even if all of the facts are taken in a light most favorable to Bresser, he has not come forward with any evidence that an unprivileged false and defamatory statement was made to a third party or that he has suffered any special damages as a result of this statement. Thus, Bresser's defamation claim should be dismissed for the reasons set forth above and because Bresser stated at his deposition that he knows of no other "untrue" statements that Schlumberger has made about him. (*Id.* at 124.)

**D.    The Facts Taken In a Light Most Favorable to Bresser Do Not Establish The Existence Of A Legally Enforceable Contract.**

Bresser's Third Claim for Relief: Breach of Contract as to Wages and

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Benefits appears to allege that he had a contract with Schlumberger that he would be employed as an employee instead of as an independent contractor. (Ex. H, First Amended Complaint at ¶¶ 14-18.) In support of this claim, Bresser's First Amended Complaint includes an allegation that Schlumberger promised to pay him wages and to provide him employee benefits. (*Id.* at ¶ 16.) The First Amended Complaint also alleges that these promises were used to induce Bresser to leave other employment. (*Id.* at ¶¶ 15-16.)

However, Bresser's testimony directly contradicts the allegations made in the First Amended Complaint. Moreover, Bresser has not alleged facts that would establish the existence of a contract or a legally enforceable promise. "A contract is a promise or set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." 1 S. Williston, A Treatise on the Law of Contracts, § 1 93d ed. (1966). However, to prove that a contract exists, the plaintiff must show that the parties expressed mutual assent to the terms of the agreement. To do this, the plaintiff must show that both of the parties by deeds or words indicated that they agreed on the terms of the agreement. *B. B. & S. Constr. Co. v. Stone*, 535 P.2d 271, 275 n.8 (Alaska 1975). The court will not look at a party's subjective intent, but rather will look at the words and actions to determine if the party objectively and reasonably led another to believe a contract had been entered into. *See* Restatement (Second) of Contracts § 19 comment a; 1 Corbin on Contracts § 9, at 107 (1963). The plaintiff must show that the parties agreed upon the essential terms of the contract to show the existence of a contract. *Clark v. Greater Anchorage, Inc.*, 780 P.2d 1031 (Alaska 1989); *Howarth v. First Nat'l Bank of Anchorage*, 596 P.2d 1164 (Alaska

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

1979).

At his deposition, Bresser specifically denied that any offers were made to him or that he had a contract with Schlumberger. (Ex. A, Bresser Dep. at 40.) Bresser stated that in late 2001, he decided he did not want to run his business anymore and so he contacted his former supervisor Joey LeBlanc and told LeBlanc that he "was willing to go back to the Slope." (*Id.* at 33.) Bresser reports that LeBlanc told him that he was "more than glad to have me work for him again and asked me when I could go to the Slope." (*Id.*) Bresser claims that he "assumed" that he would be hired as an employee and would receive benefits similar to those he had received before. (Ex. B, Plaintiff's Responses to Defendant's First Discovery Requests, at p. 17; Ex. A, Bresser Dep. at p. 37.) However, Bresser concedes that LeBlanc spoke with him about working as a contractor before he came to the Slope. (*Id.* at 35.) Bresser admits that LeBlanc never promised him he would be an employee. (Ex. A, Bresser Dep. at 37.) Bresser also states that LeBlanc told him nothing about the position and made no promises to him about the duration, pay or benefits. (*Id.* at 40, 43.)

Moreover, Bresser also testified that LeBlanc first offered to hire him as an employee at the rate of pay Bresser had previously earned. (Ex. A, Bresser Dep. at 33.) Bresser went on to explain that when he rejected this, LeBlanc informed him that he could only pay him a higher hourly rate if Bresser was a contractor. (Ex. A, Bresser Dep. at 34.) Bresser does not deny that he insisted to LeBlanc that he receive the contractor pay ($25 per hour), instead of the pay LeBlanc offered Bresser to be an employee (approximately $16 per hour). (Ex. A, Bresser Dep. at 28, 34-35.)

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Additionally, Bresser testified that he did not talk to anyone else about wanting to become an employee until years after he began working as a contractor. (*Id.* at 37-39.) When Bresser did speak about this with Jeff Culbertson, his supervisor at the time, he states that although he expressed interest in becoming an employee, he also made it clear to Culbertson that he was not interested in accepting the wage rate that Culbertson told Bresser he would be paid as an employee. (*Id.* at 47.) Bresser informed Culbertson he would need to make something equivalent to the pay he made as a contractor. (*Id.*)

The facts as testified to by Bresser do not support the allegations made in the First Amended Complaint. He has not alleged facts that tend to show that the parties agreed upon the essential terms of a contract that obligated Schlumberger to employ Bresser as an employee and pay him employment benefits. *See Clark v. Greater Anchorage, Inc.*, 780 P.2d 1031 (Alaska 1989); *Howarth v. First Nat'l Bank of Anchorage*, 596 P.2d 1164 (Alaska 1979). Rather, the alleged facts demonstrate that, if anything, Bresser and Schlumberger had an agreement that he would be an independent contractor. Thus, Bresser's own testimony clearly establishes that Schlumberger did not make promises or a set of promises to Bresser that were violated. For this reason, his breach of contract claim should be dismissed.[11]

_____

[11] To the extent Bresser may be asserting a promissory estoppel claim, the claim is flawed for the same reason his breach of contract claim is. Promissory estoppel requires a showing that:

> (1) The action induced amounts to a substantial change of position; (2) it was either actually foreseen or reasonably

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

E.     **Bresser Has Not Pled a Legally Viable Violation of Law and Public Policy Claim.**

Bresser's last claim for relief alleges a "Violation of Law and Public Policy" arising from the fact that he was an independent contractor rather than an employee of Schlumberger's. (Ex. H, First Amended Complaint at ¶¶ 19-20.) As is explained above, the Alaska Supreme Court has recognized a tort claim for violation of public policy. *See Reust v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807, 812 (Alaska 2005); *Kinzel v. Discovery Drilling, Inc.*, 93 P.3d 427, 433 (Alaska 2004). The Court has also explained that public policy is found in "the common law, statutes and the constitution of this state." *Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1132 (Alaska 1989).

Bresser has not in his First Amended Complaint, written discovery responses or at his deposition identified a single statute, regulation, constitutional provision or body of common law that was violated by Schlumberger's treatment of him. He does not provide any explanation of how or why he thinks he was not properly treated as an independent contractor or any information regarding how this situation violated public policy found in some law.

Bresser must, at a minimum, provide some indication of the laws that

---

foreseeable by the promissory; (3) **an actual promise was made and itself induced the action or forbearance in reliance thereon**; and (4) enforcement is necessary in the interest of justice.

*Valdez Fisheries Development Association, Inc. v. Alyeska Pipeline Service Co.*, 45 P.3d 657, 668 (Alaska 2002) (emphasis added). Bresser's testified that he was not promised that he would be an employee and receive employment benefits. (Ex. A, Bresser Dep. at 37.)

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

were allegedly violated because, even if Bresser can show he was an employee for certain statutory purposes, Schlumberger may have legal defenses that require dismissal of the claim. For example, the Alaska Supreme Court has recently made it clear that not every statute can give rise to a public policy claim. The Court in a recent case explained that where a statute provides a comprehensive remedial scheme, a common law cause of action for violation of public policy cannot be implied from the statute. *See Reust,* 127 P.3d at 813 n.13. Bresser may be basing his public policy claim on a statute that provides a comprehensive remedial scheme. However, because Bresser has not identified which statutes were violated, Schlumberger cannot say whether that claim would be barred by the Court's holding in *Reust.*

Similarly, depending on what statutes Bresser is relying upon to provide the public policy at issue, the claim may be preempted. As is explained in detail in the prior summary judgment motion filed by Schlumberger, to the extent Bresser is asserting a claim for health or retirement benefits, the claim is preempted by federal law. Likewise, the various statutes that Bresser may be relying upon have different definitions of "employee" and, without knowing which statutes are at issue, Schlumberger and the court have no basis for analyzing whether Bresser was an employee for the purposes of that statute. Thus, there may be no factual basis for his claim.

In sum, Bresser has failed to plead, let alone produce evidence, that a statute, regulation, constitutional provision or common law has been violated. For this reason his public policy claim should be dismissed.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

## IV.    CONCLUSION

For the reasons set forth above Schlumberger Technology Corporation respectfully requests that this court grant Schlumberger's motion for summary judgment, dismiss Jason Bresser's four remaining claims with prejudice, and enter judgment in Schlumberger's favor.

DATED at Anchorage, Alaska, this 22nd day of November, 2006.

**PERKINS COIE LLP**
Attorneys for Defendant


By s/Thomas M. Daniel
    Thomas M. Daniel
    Alaska Bar No. 8601003
    1029 West Third Ave., Suite 300
    Anchorage, Alaska 99501
    Phone: 907/279-8561
    Fax: 907-276-3108
    TDaniel@perkinscoie.com

I hereby certify that on November 22, 2006, a copy of the foregoing Defendant Schlumberger's Motion For Summary Judgment On Remaining Claims was served electronically on Joe P. Josephson, Josephson & Associates, P.C., Attorneys at Law

s/ Thomas M. Daniel

DEFENDANT SCHLUMBERGER'S MOTION FOR SUMMARY JUDGMENT
ON REMAINING CLAIMS                    - 42 -                    [33454-0002-000000/12545284_1.DOC]
33454-0002/LEGAL12545284.1